# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PATRICK H. RANDLE,
　　　　　*Petitioner-Appellant,*

　　　　　v.

JACKIE CRAWFORD; NEVADA
ATTORNEY GENERAL,
　　　　　*Respondents-Appellees.*

No. 08-15657

D.C. No.
3:02-CV-00617-
ECR-RAM

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, District Judge, Presiding

Argued and Submitted
March 9, 2009—San Francisco, California
Submission Vacated and Deferred March 12, 2009
Resubmitted August 4, 2009

Filed August 25, 2009
Amended May 14, 2010

Before: J. Clifford Wallace, Sidney R. Thomas and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Wallace

## COUNSEL

Franny A. Forsman, Federal Public Defender, and John C. Lambrose, Assistant Federal Public Defender, Las Vegas, Nevada, for the petitioner-appellant.

Catherine Cortez Masto, Attorney General, and Dennis C. Wilson, Deputy Attorney General, Las Vegas, Nevada, for the respondents-appellees.

---

## ORDER

The court's opinion filed August 25, 2009, slip op. 11749, and appearing at 578 F.3d 1177 (9th Cir. 2009), is hereby amended. An amended opinion is filed herewith.

With this amended opinion, the panel has voted to deny the petition for panel rehearing. Judge Thomas and Judge Bybee have voted to deny the petition for rehearing en banc, and Judge Wallace so recommends. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and the petition for rehearing en banc are DENIED. No subsequent petitions for rehearing or rehearing en banc may be filed.

---

## OPINION

WALLACE, Senior Circuit Judge:

Randle is currently serving several life sentences without the possibility of parole in Nevada state prison. He appeals from a district court order dismissing his petition for writ of habeas corpus on statute of limitations grounds. He argues that the one-year statute of limitations on federal habeas claims does not bar his petition because (1) the respondents waived this affirmative defense, (2) judicial estoppel precludes the respondents from asserting this defense, (3) his petition is in fact timely under the statute, and (4) he is enti-

tled to equitable tolling. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. §§ 1291 and 2253. We affirm.

## I.

In 1996, Randle was tried and convicted in a Nevada state court on a five-count felony indictment, including first degree murder with use of a deadly weapon. He was sentenced to the equivalent of four consecutive life sentences without the possibility of parole. His judgment of conviction was filed on August 5, 1996. Under Nevada law, Randle had until September 4, 1996 (30 days from the entry of judgment) in which to file a notice of appeal from his conviction and sentence. Randle failed to do so.

On September 18, 1996, two weeks past the appeal deadline, Randle's counsel filed a Motion to Withdraw as Counsel of Record and a Motion for Extension of Time within which to File a Notice of Appeal. Counsel also requested the appointment of a state public defender to represent Randle on direct appeal. On October 1, 1996, at a hearing on the motions, the state trial court granted the motion to withdraw and appointed a state public defender to represent Randle. As for the request for an extension of time to appeal, the trial court expressed doubts regarding its authority to grant this request. The record does not reflect whether this motion was granted.

On October 23, 1996, almost two months past the appeal deadline, Randle's state public defender filed an untimely notice of appeal from Randle's conviction and sentence. The Nevada Supreme Court did not immediately respond. Meanwhile, during December of that year and January of the next, Randle wrote to the public defender twice, requesting a copy of his case file. On January 28, 1997, the public defender responded to these requests, stating that "this office cannot duplicate your entire file because of the expense and time involved. The original file will be provided to you upon

request after the appeal is decided by the [Nevada] Supreme Court."

Two months later, on March 25, 1997, the public defender filed in the Nevada Supreme Court a Motion Seeking Leave to File Untimely Docketing Statement and a Motion for Guidance. The latter motion sought "guidance as to how to proceed with the submission of appellant's opening brief given that the notice of appeal was not timely filed through no fault of the Nevada State Public Defender's Office." No response came from the Nevada Supreme Court on these motions.

On March 31, 1997, Randle wrote to the public defender, this time requesting a copy of the "appeal brief that you are preparing in my behalf." Randle followed up on this request in a letter to the public defender dated May 19, 1997. The public defender does not appear to have responded to these inquiries, and it does not appear that any briefs were filed in Randle's appeal.

On June 18, 1997, the Nevada Supreme Court dismissed Randle's appeal for lack of jurisdiction. The court held that Randle's trial counsel had failed to perfect a direct appeal, and "[n]either this court nor the [state] district court has authority to extend the time for filing a notice of appeal. . . . An untimely notice of appeal fails to vest jurisdiction in this court." In dismissing Randle's appeal, the court stated that "it appears that appellant may have an appropriate remedy in the form of a post-conviction petition in the [state] district court for a writ of habeas corpus" under state law.

A month later, on July 16, 1997, the public defender wrote to Randle, informing him of the Nevada Supreme Court's decision. The public defender advised Randle that despite the court's ruling, "[y]ou do, however, have the right to continue attacking your conviction by filing a post-conviction petition for a writ of habeas corpus" under state law. The public defender also offered that "[y]ou have one year from the date

of the remittitur to file a petition. To avoid a procedural bar for delay beyond one year, you must file your petition prior to July 8, 1998."

On July 16, 1997, Randle requested his complete case file from the public defender. On July 27, Randle wrote to the pubic defender, stating that he had received some of these materials, but that certain trial transcripts were missing. The public defender responded on August 5, stating that "[w]e sent you all the files that we had. Your letter seems to refer to only one box. However, we sent you two boxes of materials. If you have only received one box please let me know and perhaps we can track down the other box." The record does not reflect whether Randle responded to this communication. However, Randle alleges he obtained the bulk of his case file by late August 1997.

Randle mailed his pro se state habeas petition to the state district court for filing on January 26, 1998, within the time period set forth by the public defender. The state court subsequently appointed counsel for Randle to assist him in pursuing his petition. Then, on December 22, 1998, the state court denied Randle's petition. In its order, the state court first determined that the petition was untimely. Under Nevada law, a defendant generally has one year from the "entry of the judgment of conviction" to file a state habeas petition. Nev. Rev. Stat. § 34.726(1). Thus, Randle's state habeas petition was due on or before August 5, 1997, and not by July 8, 1998, as he had been advised by the public defender. Nevertheless, the state court held that "in light of the fact that [Randle] did not have the opportunity to address his issues on direct appeal, the court will consider the merits" of the petition. The state court then proceeded to deny Randle's petition on the merits.

Randle appealed from this ruling pro se, but the Nevada Supreme Court remanded the case back to the state district court for appointment of counsel. Counsel was appointed, and

Randle's appeal proceeded. On September 3, 2002, the Nevada Supreme Court affirmed the state district court's order, denying Randle's petition. With respect to the timeliness of the petition, the Nevada Supreme Court held that the state district court did not abuse its discretion in its determination of good cause to overcome the procedural bar.

Then, Randle turned to the federal court. On November 18, 2002, Randle signed and mailed a pro se federal habeas petition to the federal district court for filing. The district court subsequently appointed counsel on January 21, 2003. With assistance of counsel, Randle filed an amended federal habeas petition on October 28, 2003.

On December 10, 2003, the respondents in the federal case filed a motion to dismiss Randle's federal petition, arguing that several of the claims asserted in Randle's petition were unexhausted. They did not raise the statute of limitations defense. Rather than oppose this motion, Randle entered into a stipulation, filed February 5, 2004, to stay his federal habeas petition, pending exhaustion of his unexhausted claims. The stipulation acknowledged that Randle had already filed a second state habeas petition, on September 24, 2003, raising these unexhausted claims in state district court. The stipulation further states:

> To facilitate Randle's exhaustion of Ground II (A-N) in this case, undersigned counsel respectfully urge this Court to stay and administratively close this case pending exhaustion of unexhausted claims in state court without entry of judgment. Counsel further request that Randle be permitted to reopen this case, under the same case number and before the same magistrate, following exhaustion of his claims in state court.

On March 29, 2004, the federal district court dismissed Randle's federal petition without prejudice and without entry

of judgment. The court stated that Randle "may return to this court and move to reopen this action, under the same case number, and before the same undersigned United States District Court Judge, after exhausting his state court remedies with respect to his unexhausted claims."

Randle then returned to state court to litigate his second state habeas petition. The state district court granted him habeas relief. But the Nevada Supreme Court reversed the state district court's order on appeal. The Nevada Supreme Court further denied Randle's petition for rehearing. Remittitur in his state case was issued on July 11, 2006.

On August 8, 2006, Randle moved to reopen his federal habeas case. The motion was unopposed, and the federal district court granted the motion on January 25, 2007. The respondents subsequently filed a motion to dismiss on May 11, 2007, arguing for the first time that Randle's federal petition was barred by the one-year statute of limitations applicable to federal habeas claims. The district court granted the motion to dismiss, agreeing with the respondents that the statute of limitations barred Randle's petition. This appeal followed.

## II.

We review de novo a district court's order denying a habeas petition on statute of limitations grounds. *Harris v. Carter*, 515 F.3d 1051, 1054 (9th Cir. 2008).

## A.

**[1]** Randle first argues that the respondents waived the statute of limitations defense by not raising it earlier in these proceedings. In *Morrison v. Mahoney*, we reiterated that " '[t]here is no dispute that [the] statute of limitations [for habeas petitions] is an affirmative defense . . . . Accordingly, Federal Rules of Civil Procedure 8(c) and 12(b) require that

the state raise the statute of limitations in its first responsive pleading to avoid waiving the defense.' " 399 F.3d 1042, 1046 (9th Cir. 2005), quoting *Nardi v. Stewart*, 354 F.3d 1134, 1140 (9th Cir. 2004), *abrogated on other grounds by Day v. McDonough*, 547 U.S. 198 (2006).

**[2]** In *Morrison*, we applied this principle to a case where the state failed to raise a procedural default defense in a motion to dismiss, but subsequently asserted the defense in its answer. We stated that "Rule 7(a) defines 'pleadings' as a complaint and answer; a reply to a counterclaim; an answer to a cross-claim; and a third party complaint and answer." *Morrison*, 399 F.3d at 1046. Guided by this rule, we concluded that a "motion to dismiss is not a responsive pleading within the meaning of the Federal Rules of Civil Procedure," therefore the state did not waive its procedural default defense in that case. *Id.* at 1047, citing *United States v. Valdez*, 195 F.3d 544, 548 (9th Cir. 1999) (holding that the state's failure to raise a procedural default defense in district court did not result in waiver because "the government only filed a motion to dismiss, which was granted, and never filed an answer" to the habeas petition).

**[3]** Here, Randle argues that the respondents cannot now assert the statute of limitations because they did not raise the defense (1) in their first motion to dismiss, filed December 2, 2003, (2) as part of the stipulation to stay the proceedings, dated February 3, 2004, or (3) as an argument in opposition to Randle's motion to reopen his federal habeas case, following exhaustion of his state remedies. Plainly, none of these filings (or potential filings, as the case may be with respect to the opposition to the motion to reopen) constitute "responsive pleadings" as we have defined the term in *Morrison*. *See* 399 F.3d at 1046. Thus, the respondents' failure to raise the statute of limitations in these prior filings does not constitute waiver.

**[4]** Randle argues that we should nonetheless hold the defense waived under *Day v. McDonough*. But in *Day*, the

Supreme Court affirmed a district court's decision to consider sua sponte a statute of limitations defense against a state prisoner's habeas petition. 547 U.S. at 210-11. In so holding, the Court stated that "nothing in the record suggests that the State 'strategically' withheld the defense or chose to relinquish it." *Id.* at 211. Seizing on this language, Randle argues that the respondents here "strategically" chose to waive the statute of limitations defense by agreeing to the February 3, 2004 stipulation to stay his federal habeas proceedings. This argument does not persuade us, as the stipulation says nothing about waiving a pre-existing statute of limitations defense.

Moreover, Randle cannot articulate a coherent strategy evidenced by the respondents' signing of the stipulation. He states that by entering into the stipulation, and thereby allowing him to exhaust his remedies in state court, the Nevada Attorney General was relieved of the responsibility of defending the case in federal court. But it makes little sense for the state attorney general to forgo a potential dismissal with prejudice of the federal case on timeliness grounds for the mere "benefit" of having the county district attorney assume responsibility of the defense in state court. This is especially true given the fact that the stipulation envisioned Randle returning to federal court once he exhausted his state remedies.

**[5]** Randle also accuses the respondents of adopting a "dilatory litigation strategy," in that they could have raised the statute of limitations defense in their first motion to dismiss. However, there is no evidence that the respondents acted in bad faith in not asserting the statute of limitations at an earlier point in the litigation. Randle attempts to argue in a footnote that he is prejudiced by the state's delay in asserting the statute of limitations. We agree with the district court that this argument is "too general to be given any significant weight." Under these circumstances, we conclude that waiver is not appropriate.

## B.

Second, Randle argues that the doctrine of judicial estoppel prevents the respondents from asserting the statute of limitations because this defense is inconsistent with the February 3, 2004 stipulation. In determining whether to apply judicial estoppel, we consider (1) whether a party's position in the later judicial proceeding is clearly inconsistent with that party's earlier position, (2) whether the party persuaded the first court to accept the earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that one of the two courts was misled, and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001), citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

**[6]** None of these considerations supports application of judicial estoppel here. First, the respondents' assertion of the statute of limitations is not clearly inconsistent with their earlier stipulation to allow Randle to exhaust his state remedies. As described above, the stipulation did not constitute either an express or an implied waiver of the statute of limitations defense. Second, because there is no inconsistency in the respondents' positions, there is also no threat that judicial acceptance of the defense would create the perception that the district court was misled. Third, Randle has failed to show that allowing the respondents to pursue the limitations defense would impose an "unfair detriment" on him. As the district court stated, if anything the respondents' late assertion of the limitations defense allowed Randle to seek — and possibly win — habeas relief in the state courts.

## C.

Third, Randle argues that his petition was timely pursuant to 28 U.S.C. § 2244(d)(1). That section provides that the one-

year statute of limitations on federal habeas claims runs from the latest of four specified dates. Applying this provision, the district court concluded that the one-year limitations period for Randle's petition began on September 4, 1996. Randle argues that the district court erred in this determination.

Randle's initial argument is that the one-year limitations period began on July 18, 1997 pursuant to either section 2244(d)(1)(A) or section 2244(d)(1)(B). Starting with subsection (A), it provides that the one-year limitations period begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Randle argues that the "conclusion of direct review" in his case occurred on July 18, 1997, the date on which the Nevada Supreme Court dismissed his direct appeal as untimely.

**[7]** We have yet to address the issue of whether a state court's dismissal of an untimely notice of appeal constitutes the conclusion of direct review under subsection (A). However, the Second Circuit faced an analogous situation in *Bethea v. Girdich*, where it determined whether a state court's decision on a motion to extend the time to appeal or to file a late notice of appeal "restarted" the one-year limitations period for purposes of federal habeas review. 293 F.3d 577, 578 (2d Cir. 2002). The court ruled that such a decision does not restart the limitations period because to hold otherwise would allow " 'state prisoners . . . [to] extend or manipulate the deadline for federal habeas review by filing additional petitions in state court,' thus defeating the goal of the [federal statute of limitations] to prevent undue delays in federal habeas review." *Id.* at 578-79, quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *see also Searcy v. Carter*, 246 F.3d 515, 518-20 (6th Cir. 2001) (holding that a state court's denial of a motion to file a delayed appeal is not part of the direct review process for purposes of determining when the statute of limitations begins to run).

**[8]** We agree with the reasoning of the Second Circuit and hold that the Nevada Supreme Court's order, dismissing Randle's appeal as untimely, did not constitute "the conclusion of direct review" pursuant to section 2244(d)(1)(A). If the one-year limitations period were made contingent on the resolution of a petitioner's attempt to file an untimely notice of appeal, a petitioner could indefinitely delay the commencement of the one-year period by simply waiting to file such notice until after the normal expiration date. Sanctioning this procedure would undermine the statute of limitations for federal habeas petitions. *Bethea*, 293 F.3d at 578-79. Therefore, we reject Randle's theory that the "conclusion of direct review" in his case occurred on July 18, 1997.

**[9]** Section 2244(d)(1)(B) provides that the limitations period begins on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Randle argues that his state-appointed counsel failed to perfect a direct appeal of his conviction and sentence, and that this failure prevented him from filing his federal habeas petition until July 18, 1997.

**[10]** In *Bryant v. Arizona Attorney General*, we held that subsection (B) requires the petitioner to "show a causal connection between the unlawful impediment and his failure to file a timely habeas petition." 499 F.3d 1056, 1060 (9th Cir. 2007). In this case, Randle has not suggested any such causal connection between his state-appointed counsel's failure to perfect a direct appeal timely and his own failure to file his federal habeas petition timely. He alleges only that his counsel's failure to file a timely notice of appeal denied him his right to *direct appeal*, not that it prevented him from filing a federal habeas petition. *See, e.g.*, *Shannon v. Newland*, 410 F.3d 1083, 1087-88 (9th Cir. 2005) (rejecting a petitioner's argument that a decision by an intermediate state appellate court, which was subsequently overruled by the state supreme

court, constituted an "impediment" to filing a federal habeas petition pursuant to section 2244(d)(1)(B) because notwithstanding the state appellate court's decision, the petitioner was "free to *file* such [a federal habeas] petition at any time"). *Bryant* leads us to disagree with Randle's argument that the one-year limitations period began on July 18, 1997 pursuant to section 2244(d)(1)(B).

Randle suggests that his inability to file a direct appeal delayed his filing of his state habeas claim, which in turn delayed his filing of his federal habeas claim because "under the law in this Circuit, he could not have filed a Section 2254 action without at least one exhausted claim." But Randle does not show how his counsel's failure to file a direct appeal delayed the filing of his state habeas action. Randle does not explain why he could not file his state habeas petition while awaiting the outcome of his request for leave to file an out-of-time direct appeal. Instead, as Randle himself recognizes, the remedy provided by Nevada law for his counsel's failure to perfect a direct appeal was his state post-conviction proceeding pursuant to *Lozada v. State*, 871 P.2d 944, 950 (Nev. 1994). We also reject Randle's related argument that his state-appointed counsel's conduct caused a later start date for the one-year limitations period pursuant to section 2244(d)(1)(D). Randle does not explain how his counsel's conduct could constitute a "factual predicate of the claim or claims presented" in his federal habeas petition. *See* 28 U.S.C. § 2244(d)(1)(D).

Changing to another proposed starting date, Randle argues that the one-year limitations period in his case began on December 2, 2002 pursuant to section 2244(d)(1)(A). Relying on the recent Supreme Court decision *Jimenez v. Quarterman*, 129 S. Ct. 681 (2009), Randle contends that this date was the date "on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" as it was ninety days after the state supreme court affirmed the state trial court's order, denying his first state habeas petition.

The respondents argue that Randle waived this argument on appeal because he did not raise it until oral argument. The respondents also point out that in his opening appellate brief, Randle expressly disclaimed any argument that "his date of finality occurred when the 1998 habeas action concluded." But Randle filed his opening brief on appeal on July 7, 2008. *Jimenez* was decided on January 13, 2009. On March 2, 2009, Randle filed a letter pursuant to Circuit Rule 28(j), advising the court of *Jimenez* and raising this argument. Oral argument was then held in this case on March 9, 2009. Under these circumstances, where Randle could not have raised his argument prior to filing his opening brief on appeal, and where he promptly raised the argument before us once the decision on which it is based was issued, we conclude that Randle did not waive this argument on appeal. *See Cold Mountain v. Garber*, 375 F.3d 884, 891 (9th Cir. 2004) (holding that we have discretion to consider a new argument on appeal when the issue arises "because of a change in the law" while the case is on appeal).

However, we disagree with Randle's argument on the merits because *Jimenez* is distinguishable. In that case, the petitioner missed his opportunity to file a direct appeal from his conviction and sentence in state court. 129 S. Ct. at 683. He then filed a state habeas petition, arguing that he was denied his right to appeal. *Id.* The state court of appeal agreed, and granted the petitioner the right to file an out-of-time appeal, which the petitioner promptly pursued. *Id.* The petitioner's conviction was ultimately affirmed. *Id.* at 684. After the time in which to petition the Supreme Court for certiorari had expired, the petitioner filed a federal habeas petition. *Id.* The district court dismissed the petition as untimely, rejecting the petitioner's argument that the "conclusion of direct review" in his case occurred when the time expired for seeking certiorari review of the decision in his out-of-time appeal. *Id.* The Fifth Circuit denied a certificate of appealability on the timeliness issue. *Id.*

The Supreme Court reversed the judgment of the Fifth Circuit, reasoning that "direct review cannot conclude for purposes of § 2244(d)(1)(A) until the availability of direct appeal to the state courts, and to this Court, has been exhausted." *Id.* at 685 (internal citations and quotation marks omitted). In *Jimenez*, "the order granting an out-of-time appeal restored the pendency of the direct appeal and petitioner's conviction was again capable of modification through direct appeal to the state courts and to this Court on certiorari review." *Id.* at 686 (internal citation and quotation marks omitted). Thus, the Court held, " 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review' must reflect the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal." *Id.* at 686-87. The Court emphasized that this holding is a "narrow one" based on the "most natural reading of the statutory text." *Id.* at 685, 686.

**[11]** In the case before us, Randle argues that the Nevada Supreme Court's decision on his first state habeas petition is equivalent to a decision on an out-of-time direct appeal. But unlike *Jimenez*, the Nevada Supreme Court never granted Randle leave to file an out-of-time direct appeal. Rather, the state supreme court explicitly stated that an untimely direct appeal was foreclosed by state rules, and that "[a]n untimely notice of appeal fails to vest jurisdiction in this court." At no point did the Nevada Supreme Court "restor[e] the pendency of the direct appeal," nor was "petitioner's conviction . . . again capable of modification through direct appeal to the state courts and to [the Supreme Court] on certiorari review." *Jimenez*, 129 S. Ct. at 686 (internal citation omitted). Randle sought to restore his direct appeal, and that request was rejected by the Nevada Supreme Court. Although Randle was entitled to present, pursuant to *Lozada*, the arguments that he would have presented on direct appeal in his state post-conviction relief proceeding, his direct appeal was not, and could not be, reinstated. *Jimenez* therefore does not apply, and

we conclude that the one-year limitations period did not begin on December 2, 2002.

**[12]** As a third alternative, Randle argues the one-year limitations period began on August 18, 1997, the date on which he alleges that he finally received the bulk of his case file from the state public defender. Randle reasons that the delay he experienced in receiving his files constituted an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States" pursuant to section 2244(d)(1)(B). However, Randle again does not explain any causal relationship between his inability to retrieve his files and his failure to file his federal habeas petition. The record indicates that Randle sought these materials in order to file his first state habeas petition, not a federal habeas petition. In a footnote, Randle asserts a possible causal connection between his counsel's retention of his file and his failure to file a timely federal habeas petition: Randle asserts that he could not file his federal habeas petition until he had at least one fully exhausted federal claim, and that he could not file his state habeas petition to exhaust a claim until he obtained his file. This assertion does not provide a causal connection between counsel's retention of Randle's file and his failure to file his federal habeas petition timely. Pursuant to section 2244(d)(1), the statute of limitations began on September 4, 1996. Randle concedes, however, he did not begin to seek his file until sometime in December 1996, after the statutory clock had already began ticking. Further, although Randle first sought to obtain a copy of his file commencing in December 1996, it does not appear from the record that he sought it *for the purposes of filing a state habeas petition* until sometime in July 1997. There is no evidence in the record that, but for counsel's retention of his file, Randle would have sought to file a federal habeas petition, or a state habeas petition for that matter, within the statutory time limits. We therefore disagree that August 18, 1997 is the start date for the limitations period on Randle's habeas claims.

**[13]** Having rejected each of Randle's alternative start dates, we conclude that the district court correctly ruled that the one-year limitations period on Randle's habeas claims began on September 4, 1996 pursuant to section 2244(d)(1)(A). Thus, as the district court held, even with the benefit of statutory tolling pursuant to section 2244(d)(2), Randle's petition was untimely by 192 days.

**D.**

**[14]** Finally, Randle argues that he is entitled to equitable tolling of the statute of limitations. Equitable tolling is only appropriate if "*extraordinary* circumstances beyond a prisoner's control make it impossible to file a petition on time." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quotation marks and citation omitted) (emphasis in original). Randle argues that he meets this tolling requirement because (1) his counsel failed to perfect a timely appeal and to inform him of the time in which to initiate a state habeas petition, and (2) his counsel failed to provide him with his case files in a timely manner.

**[15]** First, as the district court concluded, the alleged negligence of Randle's counsel had little to no bearing on his ability to file a timely federal habeas petition. Counsel's failure to perfect an appeal simply meant that Randle had one year from the expiration of his time to file a notice of appeal in which to initiate a federal habeas action — it did not prevent him from filing the petition. Similarly, counsel's incorrect advice with respect to the time frame in which to file a state habeas case did not prevent Randle from filing his *federal* habeas petition on time. To the extent that his counsel's negligence in miscalculating the filing deadlines in his state proceedings resulted in Randle also missing the federal deadline, we have held that an attorney's negligence in calculating the limitations period for a habeas petition does not constitute an "extraordinary circumstance" warranting equitable tolling. *Miranda*, 292 F.3d at 1066-67, citing *Frye v. Hickman*, 273

F.3d 1144 (9th Cir. 2001). No such extraordinary circumstances are present in this case.

**[16]** Second, Randle does not allege that his counsel's delay in providing him his legal files prevented him from timely filing his *federal* habeas petition. Rather, as the district court found, it appears that Randle sought his legal files in order to file a state habeas petition. Thus, *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003) is distinguishable. In *Spitsyn*, the petitioner's attorney retained the petitioner's case file through the duration of the federal limitations period. *Id.* at 801. Here, although counsel retained Randle's file until August 1997, there is no indication that had Randle received the files sooner, he would have filed a federal habeas petition within the one-year limitations period.

As described above, Randle has asserted that his counsel's delay in providing his file delayed the filing of his federal habeas petition because he could not file his federal habeas petition until he had at least one fully exhausted claim to present. But as we have already described, it does not appear that Randle sought his file for the purpose of filing a state habeas petition until sometime in July 1997. Further, when Randle did seek his file, it was for the purpose of filing a state habeas petition and does not reflect contemplation of a federal habeas petition. While exhaustion may be required as a legal matter, the record does not reflect this as a factual cause of Randle's delay.

**AFFIRMED.**