**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KENNY WARREN THOMPSON,
            *Petitioner-Appellant,*

            v.

MELISSA LEA, Chief Deputy
Administrator of the California
Out of State Correctional Facility
Unit,

            *Respondent-Appellee.*

No. 09-55753

D.C. No.
2:08-cv-04290-
SJO-AGR

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
March 6, 2012—Pasadena, California

Filed June 7, 2012

Before: Harry Pregerson, Ronald M. Gould, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Gould;
Dissent by Judge Tallman

**COUNSEL**

Geoffrey M. Jones, Fairfax, California, for the petitioner-appellant.

Rama R. Maline, Office of the California Attorney General, Los Angeles, California, for the respondent-appellee.

**OPINION**

GOULD, Circuit Judge:

California state prisoner Kenny Warren Thompson appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition because of its conclusion that the petition was time-barred. We have jurisdiction under 28 U.S.C. § 2253. We reverse and remand.

[1] The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets a one-year limitations period in which a state prisoner must file a federal habeas corpus petition. 28 U.S.C. § 2244(d)(1). The limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). The limitations period may be reset if a

state court reopens direct review and a petitioner's conviction becomes "again capable of modification through direct appeal to the state courts and to [the Supreme] Court on certiorari review." *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009).

Here, Thompson's conviction initially became "final" on July 11, 2006, ninety days after the California Supreme Court denied his petition for review on direct appeal "without prejudice to any relief to which defendant [Thompson] might be entitled after the United States Supreme Court determines in *Cunningham v. California . . .* the effect of *Blakely v. Washington*[, 542 U.S. 296 (2004)] and *United States v. Booker*[, 543 U.S. 220 (2005)], on California law." *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999) (holding that AEDPA's one-year limitations period begins to run after ninety-day period for seeking writ of certiorari in Supreme Court expires). After the Supreme Court decided *Cunningham v. California*, 549 U.S. 270 (2007), Thompson filed a motion in the California Court of Appeal to recall the remittitur and reinstate his appeal based on *Cunningham*. The court of appeal denied the motion, but on May 23, 2007, the California Supreme Court granted review of Thompson's petition for review of the court of appeal's denial order, and deferred further action in the matter pursuant to California Rule of Court 8.512(d)(2).

**[2]** By granting review, the California Supreme Court reopened direct review and made Thompson's conviction "again capable of modification through direct appeal."[1] *Jime-*

---

[1] Having granted review, the California Supreme Court could have "affirm[ed], reverse[d], or modif[ied] the judgment of the Court of Appeal," or "order[ed] another disposition," as it did in this case. *See* Cal. R. Ct. 8.528(a). The dissent's position is based on a non-literal reading of the California Supreme Court order that explicitly stated that review was "granted" and that briefing and further action were deferred. In concluding that the grant and hold order presented only the "possibility" that direct review would be reopened, the dissent reads the order to mean, "We may

*nez*, 555 U.S. at 120. Thompson's conviction remained nonfinal "during the pendency of the reopened appeal" and became "final" for purposes of § 2244(d)(1)(A) on December 11, 2007, ninety days after the California Supreme Court dismissed review on the merits, in light of its decision in *People v. Black*, 161 P.3d 1130 (Cal. 2007).[2] *See id.* at 120 & n.4; *Bowen*, 188 F.3d at 1160; *see also* Cal. R. Ct. 8.528(b) advisory committee's comment (explaining that "after the [California Supreme Court] decides a 'lead' case"—here, *People v. Black*—"its current practice is to dismiss review in any pending companion case (i.e., a 'grant and hold' matter under [current Rule 8.512(d)]) that appears correctly decided in light of the lead case and presents no additional issue requiring resolution by the Supreme Court or the Court of Appeal").[3]

---

grant review later, but for now we are just holding." The dissent's position in this case would not advance "AEDPA's goal of promoting comity, finality, and federalism." *Jimenez*, 555 U.S. at 121 (internal quotation marks omitted). Rather than give California courts the first opportunity to review Thompson's *Cunningham* claim and "correct any constitutional violation in the first instance," the dissent would require Thompson to have filed a federal habeas petition before the state proceedings had fully run their course. *See id.* (internal quotation marks omitted). This is not a reasonable reading of *Jimenez* and if the dissent's interpretation were accepted, it would encourage federal habeas corpus litigation in cases that were not fully resolved in state court. After the California Supreme Court granted review and held Thompson's case, his conviction was "again capable of modification through direct appeal." *See id.* at 120.

[2]In *Black*, the California Supreme Court held that "imposition of an upper term sentence did not violate [the] defendant's right to a jury trial, because at least one aggravating circumstance was established by means that satisfy Sixth Amendment requirements and thus made him eligible for the upper term." 161 P.3d at 1133, 1138-40 (rejecting defendant's argument based on "*Cunningham* and its antecedents").

[3]The dissent argues that the California Supreme Court did not dismiss review "on the merits," stressing the "one-sentence summary dismissal of 112 petitions for review," including Thompson's. But on the same day that the California Supreme Court dismissed review in Thompson's and other cases, it transferred 75 cases to the California Court of Appeal for reconsideration in light of *People v. Black* and *People v. Sandoval*, 161 P.3d

Thompson's federal habeas corpus petition, filed on June 30, 2008, was timely. *See* 28 U.S.C. § 2244(d)(1).

We reverse and remand to the district court to consider Thompson's habeas corpus petition on the merits.

**REVERSED AND REMANDED.**

TALLMAN, dissenting:

This appeal turns on how we interpret the effect of the California Supreme Court's "grant and hold" order and its subsequent one-sentence order dismissing 112 petitions for review, including Thompson's motion to recall the remittitur.[1] Because I do not interpret these orders as reopening direct

1146 (Cal. 2007). *See* News Release, Judicial Council of California, Supreme Court Summary for the Week of September 10, 2007 (Sept. 12, 2007), http://www.courts.ca.gov/3012.htm; *see also, e.g., People v. Fluker*, 169 P.3d 99 (Cal. 2007); *People v. Diaz*, 169 P.3d 97 (Cal. 2007); *People v. Scott*, 169 P.3d 95 (Cal. 2007). Given that after holding a batch of cases the California Supreme Court gave relief in some cases and not others, it is a reasonable inference that the California Supreme Court considered the merits of each petition held for *Black* and *Sandoval*, concluded that some cases were correctly decided in light of those decisions and that others should be reconsidered by the California Court of Appeal, decided on the merits that Thompson's case fit in the former category, and dismissed review.

We take judicial notice of the California Supreme Court's September 12, 2007 dispositions in light of *Black* and *Sandoval* because they directly relate to this appeal. *See Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

[1]The order listed 112 case names and numbers followed by the sentence: "In light of *People v. Black* (2007) 41 Cal. 4th 799, review in the above-entitled matters is dismissed. (Cal. Rules of Court, rule 8.528(b)(1).)."

review such that Thompson's conviction and sentence were "again capable of modification through direct appeal," *Jimenez*, 555 U.S. at 120, I respectfully dissent.

The Supreme Court in *Jimenez* held that "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)." 555 U.S. at 121. The Court also reaffirmed that the mere "possibility that a state court may reopen direct review 'does not render convictions and sentences that are no longer subject to direct review nonfinal.' " *Id.* at 120 n.4 (quoting *Beard v. Banks*, 542 U.S. 406, 412 (2004)). In *Jimenez*, the Texas state court had actually granted the petitioner the right to file an out-of-time appeal, which he had filed in the Texas Court of Criminal Appeals. *Id.* at 116. Upon full review in the appellate court, his conviction was affirmed. *Id.* Thompson argues, and the majority erroneously agrees, that—based upon the grant and hold order and the subsequent summary dismissal of review *Jimenez* controls here, thus resetting the date his conviction became final to December 11, 2007. *See Opinion* at 6370-71.

Granting and holding Thompson's motion to recall the remittitur in order to decide whether his direct review should be reopened while the state court of last resort awaited issuance of a United States Supreme Court decision in a related case that could impact multiple petitions, however, only presented the mere "possibility" that direct review would be reopened. Like the petitioner in *Jimenez*, Thompson requested that the California Supreme Court recall the remittitur (akin to our court recalling the mandate) and reinstate his direct appeal so that he could present new arguments regarding the effect of *Cunningham v. California*, 549 U.S. 270 (2007), on his sentence. Unlike the Texas Court of Criminal Appeals (that state's court of last resort) however, the California Supreme Court did not actually reinstate direct review.

Thompson's motion was not remanded to the California Court of Appeal for decision on the merits and he was not allowed to file a fully briefed out-of-time appeal.[2] Instead, the California Supreme Court determined that neither *Cunningham* nor *People v. Black*, 161 P.3d 1130 (Cal. 2007), entitled him to a recall of the remittitur and reinstatement of his direct appeal.

Furthermore in *Randle v. Crawford*, 604 F.3d 1047, 1054-57 (9th Cir. 2010), in rejecting the argument that *Jimenez* applied to the Nevada Supreme Court's denial of an out-of-time appeal as untimely, we held that if the "one-year limitations period were made contingent on the resolution of a petitioner's attempt to file an untimely notice of appeal, a petitioner could indefinitely delay the commencement of the one-year period by simply waiting to file such notice until after the normal expiration date." *Id.* at 1055 (internal quotation marks omitted). Ultimately, the "narrow" holding in *Jimenez* did not apply because the petitioner merely "sought to restore his direct appeal, and that request was rejected by the Nevada Supreme Court." *Id.* at 116. And, "[a]lthough [Petitioner] was entitled to present . . . the arguments that he would have presented on direct appeal in his state postconviction relief proceeding, his direct appeal was not, and could not be reinstated." *Id.* Thompson similarly requested a second chance in the California Court of Appeal, but the California Supreme Court denied that request after the disposition in *Black*, 161 P.3d 1130. Thus, his direct appeal was never reopened and his sentence remained incapable of modification.

I further part company with my colleagues because I do not interpret the one-sentence summary dismissal of 112 petitions for review as dismissing each petition, and therefore Thomp-

---

[2]Nor does it appear that Thompson's motion was ever fully briefed before the California Supreme Court, as briefing was deferred on May 23, 2007, and never ordered before the dismissal of his motion on September 12, 2007.

son's underlying claims, "on the merits" of the arguments he *would* have made had the California Supreme Court truly reinstated direct review. Nor can we infer from a one-sentence order dismissing all of these petitions that the California Supreme Court itself fully considered the underlying merits of each case.

Indeed, we have been specifically instructed not to infer too much from similar California Supreme Court summary orders. *See Evans v. Chavez*, 546 U.S. 189, 198-99 (2006) (reversing the Ninth Circuit's determination that a California Supreme Court order was on the merits when the order "was silent on the grounds for the court's decision"); *Carey v. Saffold*, 536 U.S. 214, 226 (2002) ("Given the variety of reasons why the California Supreme Court may have included the words 'on the merits,' those words cannot by themselves indicate that the petition was timely. And the Ninth Circuit's apparent willingness to take such words as an absolute bellwether risks the tolling of the federal limitations period even when it is highly likely that the prisoner failed to seek timely review in the state appellate courts.").

The more plausible and likely reading of the one-sentence order is that, in light of the holding in *Black*, 161 P.3d 1130, the California Supreme Court dismissed Thompson's review because neither the motion to recall the remittitur nor the record before the court showed that such extraordinary relief of reopening direct review was warranted. Because Thompson was never entitled to and indeed did not have his direct review reinstated, *Jimenez* does not apply and the AEDPA clock was not reset, rendering Thompson's federal habeas petition untimely.[3] I would therefore affirm the district court's dismissal of Thompson's untimely petition.

---

[3] The majority reaches beyond the record to take judicial notice of orders transferring seventy-five cases to the California Court of Appeal for reconsideration, *Opinion* at 6371-72 n.3, to infer that the California Supreme Court concluded, on the merits, that the 112-dismissed cases were cor-

rectly decided and the 75-others should be reconsidered. I read this to support my position that the question the California Supreme Court confronted was whether reopening of direct review in a closed appeal was warranted and by dismissing Thompson's petition, the California Supreme Court definitively answered "no." Consideration of that question only presented the possibility that direct review would be reopened. It would have been a simple matter to timely file a Federal habeas corpus petition and immediately ask the district court to stay and abate action pending resolution of the motion to recall the remittitur. *See Rhines v. Weber*, 544 U.S. 269, 277-79 (2005) (approving stay and abeyance procedure to allow petitioner to exhaust claims in state court where good cause exists). This Thompson did not do.