**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GLADYS PEREZ,

*Petitioner-Appellant*,

v.

WILLIAM REUBART, Warden;
FLORENCE MCCLURE WOMEN'S
CORRECTIONAL INSTITUTION;
JAMES DZURENDA; AARON D.
FORD; BRET O. WHIPPLE,

*Respondents-Appellees*.

No. 22-15279

D.C. No.
2:14-cv-02087-
APG-BNW

OPINION

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted April 2, 2024
Phoenix, Arizona

Filed August 28, 2025

Before: Richard R. Clifton, Jay S. Bybee, and Bridget S.
Bade, Circuit Judges.

Opinion by Judge Clifton;
Dissent by Judge Bade

# SUMMARY[*]

## Habeas Corpus

The panel reversed the district court's judgment dismissing as untimely Gladys Perez's petition for habeas corpus relief under 28 U.S.C. § 2254, and remanded for further proceedings.

Perez, who filed her federal habeas petition seven days after the expiration of the one-year limitations period, argued that the deadline should be equitably tolled because the delay in filing resulted from "extraordinary circumstances" beyond her control: her abandonment by post-conviction counsel, lack of access to her case file, and inability to obtain a financial certificate from the prison.

To qualify for equitable tolling under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner must show (1) that she has been pursuing her rights diligently, and (2) that some extraordinary circumstance stood in her way and prevented timely filing.

The panel held that the conduct of Perez's court-appointed post-conviction counsel Bret Whipple amounted to an extraordinary circumstance that caused Perez's delayed filing. For roughly nine months after Perez learned in December 2013 that her state petition had been denied, she reasonably expected and relied upon Whipple to pursue an appeal, which she repeatedly instructed him to file, and Whipple failed to communicate with Perez

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

whatsoever. Though Perez surmised that she had been abandoned and began working on a pro se federal habeas petition by September 14, 2014, the extraordinary circumstances did not abate, as Whipple's misconduct continued to prevent Perez's timely filing for at least two reasons: (1) at no point during his representation did Whipple inform Perez of the AEDPA deadline for her federal habeas petition; and (2) even after Whipple abandoned Perez, he failed to return her case file.

The panel held that beyond the obstacles stemming directly from Whipple's abandonment, prison officials' delay in processing her request for a financial certificate was another extraordinary circumstance that contributed to her petition being untimely.

The panel held that Perez acted diligently prior to the extraordinary circumstance of Whipple's abandonment, exercised reasonable diligence during the period of Whipple's representation, and exercised reasonable diligence in pursuing federal habeas relief on her own following Whipple's abandonment.

Judge Bade dissented. She wrote that even assuming Whipple's conduct constituted an extraordinary circumstance for purposes of equitable tolling, Perez has not shown that she was reasonably diligent in protecting her rights, or that post-conviction counsel's conduct prevented her from timely filing her federal habeas petition. Judge Bade also wrote that Perez's successful filing of her federal habeas petition on December 8, 2014, demonstrates that any delay in receiving a financial certificate was not an extraordinary circumstance that caused her to untimely file her habeas petition. Thus, equitable tolling does not apply to excuse Perez's untimely filing.

## COUNSEL

Amelia L. Bizzaro (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Federal Public Defender for the District of Nevada, Las Vegas, Nevada; for Petitioner-Appellant.

Jaimie Stilz (argued), Senior Deputy Attorney General; Aaron D. Ford, Nevada Attorney General; Nevada Office of the Attorney General, Las Vegas, Nevada; Bret O. Whipple, Pro Se, Law Office of Bret Whipple, Las Vegas, Nevada; for Respondents-Appellees.

## OPINION

CLIFTON, Circuit Judge:

Gladys Perez appeals from the district court's dismissal of her petition for habeas corpus relief under 28 U.S.C. § 2254 as untimely. She argues that the deadline for filing her petition should be equitably tolled because the delay in filing resulted from "extraordinary circumstances" beyond her control: her abandonment by post-conviction counsel, lack of access to her case file, and inability to obtain a financial certificate from the prison. Despite these challenges, Perez diligently pursued federal habeas relief herself and ultimately filed her petition seven days after the expiration of the applicable one-year limitations period. We conclude that based on these facts, equitable tolling of the deadline is appropriate. We reverse the dismissal and remand to the district court to consider the merits of the petition.

## I. Background

In 2009, Perez was convicted of first-degree murder, child neglect, and child abuse in Nevada state court. She was sentenced to life in prison with the possibility of parole. The conviction was affirmed by the Supreme Court of Nevada in September 2011, and Perez's petitions for rehearing were denied on February 24, 2012. Perez did not seek review from the United States Supreme Court, and her conviction became final on May 24, 2012, the date on which the time for filing a petition for a writ of certiorari expired. *See Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir. 1999) (explaining that a conviction becomes final after the 90-day period of direct review elapses, even if no petition for writ of certiorari is filed).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner has one year from the time her conviction becomes final to seek federal habeas corpus relief. 28 U.S.C. § 2244(d)(1). The original deadline for Perez to file a petition for a writ of habeas corpus was thus May 24, 2013. On August 22, 2012, after 89 days of the federal limitations period had elapsed, Perez filed a state post-conviction petition for habeas corpus. The clock stopped on the AEDPA limitations period during the pendency of her state proceedings. *See* 28 U.S.C. § 2244(d)(2). When the clock restarted after the state proceedings ended, 276 days remained.

Perez filed her initial state post-conviction petition pro se, and the court subsequently appointed Bret Whipple to serve as her attorney. On December 5, 2013, with Perez in attendance, the state court orally denied the petition, noting that an order would follow. The written order was filed on January 14, 2014, and a Notice of Entry of Order was filed

on January 21, 2014, and sent to Perez the same day.[1] The notice explained that Perez had 33 days (or until February 24, 2014) to appeal the denial of her petition. If no appeal was filed, the order would become final and the AEDPA clock would restart on February 24, making the new federal habeas deadline December 1, 2014.

In an affidavit filed December 15, 2014, Perez explained that in response to the state court's oral denial, she repeatedly asked Whipple to appeal, "express[ing] to counsel on several occasions that she was fighting for her life and wanted to continue to fight her case by appeal and all means necessary." In 2019, Perez declared that she "had been told that [Whipple] would send [her] a letter about [her] options going forward," but that no such letter was ever sent. Nonetheless, according to her 2014 affidavit, Perez remained "under [the] impression" that Whipple was "actively pursu[ing]" an appeal. She made frequent calls to Whipple from prison to check on the status of her case. Between March and August 2014, Perez made 15 attempts to reach Whipple by phone, seeking updates about the appeal and asking Whipple to provide documents pertaining to her case, including the written order denying her state post-conviction petition. Whipple never responded. During this time, despite her attorney's silence, Perez had no independent reason to believe that Whipple had *not* followed

---

[1] Though the notice was mailed, the record is at best unclear as to whether it was ever actually received by the prison. Perez attested in a sworn affidavit dated December 8, 2014 that she had never received any such document. Despite Perez's statement, the dissent speculates that she likely received the written order and notice, pointing to the prison mail logs. Dissent at 45 & n.10. The mail logs only indicate, however, that Perez received some mail from Whipple and the state court on January 8, 2014, well before the day the court even mailed out the notice of entry.

her instructions to file an appeal. Had Whipple done so, the AEDPA limitations period would have been tolled during the pendency of the state appeal. *See* 28 U.S.C. § 2244(d)(2). Ultimately, no appeal was ever filed.

After so many fruitless attempts to contact Whipple, Perez began to fear that she had been abandoned by her attorney. She set about pursuing the case on her own. On September 14, 2014, she submitted an Inmate Request Form (also known as a "kite") asking for an appointment with the law library to "pick up a federal court notice of motion to appeal." On September 22, she submitted another kite, this time asking for an appointment "to mail out legal motion and make copies." Only three days later, she submitted a new kite requesting an appointment "to look up the appeals process." That same day, September 25, Perez filed a pro se notice of appeal of the denial of her state petition. Unbeknownst to Perez, who had never received the written denial of her petition explaining the deadline for an appeal, the time to file had long since passed.

Around the same time, Perez commenced work on a pro se federal habeas petition, though her progress was stymied by staffing issues and unpredictable hours in the prison law library. The designated prison law librarian had left her position sometime prior, and through the end of 2014, there was no designated law librarian. The law library only opened to prisoners when a substitute staff person was available, a situation that was completely unpredictable and which sharply limited prisoners' ability to use the law library. Without a full-time law librarian to assist her, Perez relied on Rosemary Vandecar, a fellow inmate and the designated law library clerk, for help with drafting the federal petition. Vandecar was new to the position and was learning as she went, with Perez's federal petition being one of the first

federal habeas petitions she had ever worked on. Lacking a complete set of federal habeas forms, instructions on how to file, or any way to figure out the filing deadline, Perez and Vandecar muddled through as best they could.

In the course of drafting her federal petition, Perez submitted a number of additional kites between October and December 2014 requesting appointments with the law library. But with the law library rarely open, Perez and Vandecar did most of the work in their cells. The drafting process was further complicated by Perez's inability to access her complete file, which filled at least eight boxes, both because Whipple had failed to furnish her his portion of the case file after he abandoned her and because prison rules prevented inmates from having more than one legal box (or two boxes total) in their cell at a time. On November 15, 2014, Perez wrote to the state court, requesting a copy of the order denying her post-conviction petition and a "Copy of all Records in her file." Receiving no response, she later renewed the request and further asked for Whipple to be removed as her counsel of record due to his abandonment of her.

As Perez prepared to file, she made repeated requests for the prison to complete a financial certificate, which she understood needed to be filed alongside her habeas petition. Perez submitted a form requesting the certificate on November 12, and the prison advised Perez that it was "[d]one" on November 20. But Perez never received the certificate, so on November 23, Perez again asked the prison to file it. On December 1, the prison informed Perez that her request had been submitted to Inmate Banking. The same day, Perez filled out a new kite labeled "Time Sensitive" in which she requested "an appointment [with the law library] as soon as possible" to mail her petition to the U.S. District

Court, "no later than Friday, December 5, 2014." The prison complied with her request and made her an appointment on December 5, but due to the library's closure on that date rescheduled the appointment to December 8, the earliest date with availability for "substitute staff." Given the prison's policy that inmates could send out legal mail only through the library, Perez had no choice but to wait three extra days. Around the same time, despite the prison's repeated assurances that her financial certificate had been handled, Perez was informed that the certificate remained unfiled due to a delay in processing. She ultimately filed her habeas petition with the federal district court without the financial certificate, declaring in 2019 that while she "was worried [her] federal petition . . . would be rejected because [she] didn't have all [her] records, . . . [she] also didn't want to wait to file it."

The parties agree that on December 8, 2014, Perez filed her federal habeas petition. That was one week after the actual deadline of December 1, 2014. The court subsequently appointed new counsel for Perez, and over the course of the next several years, the parties engaged in limited discovery on the issue of Whipple's conduct. On February 2, 2022, the district court denied Perez's request for equitable tolling and dismissed the petition with prejudice as untimely filed. This appeal followed.

## II. Standard of Review

We review de novo the dismissal of a federal habeas petition as untimely. *Smith v. Davis*, 953 F.3d 582, 587 (9th Cir. 2020) (en banc). "If the facts underlying a claim for equitable tolling are undisputed, the question of whether the statute of limitations should be equitably tolled is also reviewed de novo. Otherwise, findings of fact made by the

district court are to be reviewed for clear error." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (citation omitted).

## III.  Discussion

To qualify for equitable tolling under AEDPA, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation and internal quotation marks omitted). "[T]he grounds for granting equitable tolling are . . . highly fact-dependent." *Rudin v. Myles*, 781 F.3d 1043, 1055 (9th Cir. 2015). Here, we address the "requirements for equitable tolling in reverse order, as the facts of this case lend themselves better to that treatment." *See Gibbs v. Legrand*, 767 F.3d 879, 885 (9th Cir. 2014).

### A.  Extraordinary Circumstances

"In evaluating whether an 'extraordinary circumstance stood in a petitioner's way and prevented timely filing,' a court is not bound by 'mechanical rules' and must decide the issue based on all the circumstances of the case before it." *Smith*, 953 F.3d at 600 (alterations accepted) (quoting *Holland*, 560 U.S. at 649–50). But "it is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy." *Id.* In other words, the element of extraordinary circumstances incorporates a causation requirement, which is to be assessed against the standard of reasonable diligence. Our analysis of the causation requirement thus inevitably "speaks to the

diligence required by a petitioner seeking equitable tolling."**[2]** *Id.* at 595.

Echoing the Supreme Court's caution that reasonable diligence is "not maximum feasible diligence," *see Holland*, 560 U.S. at 653 (internal quotation marks omitted), we have stressed that the causation requirement "does not impose a rigid 'impossibility' standard on litigants, and especially not on 'pro se prisoner litigants—who have already faced an unusual obstacle beyond their control during the AEDPA limitation period.'" *Smith*, 953 F.3d at 600 (quoting *Fue v. Biter*, 842 F.3d 650, 657 (9th Cir. 2016) (en banc)); *see also Fue*, 842 F.3d at 657 ("Our post-*Holland* cases 'have applied this "impossibility" standard leniently, rejecting a literal interpretation.'" (quoting *Gibbs*, 767 F.3d at 888 n.8)).

Generally speaking, "ordinary attorney negligence" will not rise to the level of an extraordinary circumstance. *Spitsyn*, 345 F.3d at 800. But if "sufficiently egregious,"

---

[2] Some of our precedents, including one decided after *Smith*, have interpreted *Holland*'s two-pronged test as requiring only but-for causation where the alleged extraordinary circumstance is the petitioner's mental impairment. *See Bills v. Clark*, 628 F.3d 1092, 1099–100 (9th Cir. 2010) (first interpreting *Holland* this way in the context of mental impairments); *Milam v. Harrington*, 953 F.3d 1128, 1133 (9th Cir. 2020); *Blackman v. Cisneros*, 122 F.4th 377, 382 (9th Cir. 2024). We observe that this relaxed requirement of but-for causation stands in some tension with our rejection of the stop-clock approach sitting en banc in *Smith*. *See Smith*, 953 F.3d at 599. But we have no occasion to address that tension today. At least regarding the causation requirement, we merely affirm what we already held in *Smith*: "The only way for a court to evaluate whether an extraordinary circumstance caused the untimely filing is to examine and assess the facts of the case to determine whether a petitioner acting with reasonable diligence could have filed his claim, despite the extraordinary circumstance, before the limitations period expired." *Id.* at 595.

attorney misconduct may warrant equitable tolling of AEDPA's statute of limitations. *Id.* "Under *Holland*, attorney abandonment may give rise to such extraordinary circumstances." *Rudin*, 781 F.3d at 1055. Here, Whipple's abandonment of Perez and his pervasive misconduct was an extraordinary circumstance that prevented Perez from timely filing her federal habeas petition.

Our caselaw on attorney abandonment is instructive. In *Rudin*, we considered a case where a petitioner's abandonment by court-appointed appellate counsel during her post-conviction review proceedings constituted an extraordinary circumstance. *See id.* at 1054–59. There, petitioner Rudin "became concerned" that her appointed counsel "was not adequately representing her" based on his unresponsiveness and lack of communication with her. *Id.* at 1050. On the rare occasions when counsel visited Rudin, he failed to provide her with updates on her case. *Id.* He also did not respond to her request for copies of her file. *Id.* Eventually, "after multiple failed attempts to contact [counsel]," Rudin discovered that her attorney had placed a collect call block on his phone, which had the result of "stopp[ing] communicat[ion] with his client altogether." *Id.* at 1050, 1051. Observing that counsel had made himself "all but impossible to reach" and had "failed to inform Rudin of the reasons for his delay, providing her no clue of 'any need to protect herself pro se,'" we concluded that Rudin had been abandoned by her attorney and held that this created an extraordinary circumstance which prevented the timely filing of her application for federal habeas relief. *Id.* at 1056 (alteration accepted) (quoting *Maples v. Thomas*, 565 U.S. 266, 271 (2012)).

Similarly, in *Gibbs*, we concluded that a prisoner's abandonment by his appellate attorney constituted an

extraordinary circumstance justifying equitable tolling. There, counsel had "*guarantee*[*d*] Gibbs that he would update him about the [state] case," but never notified Gibbs of the state court's decision and failed to communicate with Gibbs over the course of several months, including by ignoring Gibbs' multiple letters. *Gibbs*, 767 F.3d at 886–87. We noted that "[a]n attorney's failure to communicate about a key development in his client's case can . . . constitute an extraordinary circumstance," particularly where it "implicates the client's ability to bring further proceedings *and* the attorney has committed himself to informing his client of such a development." *Id.* at 885, 886. It was irrelevant that Gibbs could have theoretically learned about the development himself by "writ[ing] to the Nevada Supreme Court daily to ask about the status of his state . . . petition, [as] he had no obligation or reason to do so, given that he was represented and had . . . been specifically promised by his lawyer prompt notice of any decision." *Id.* at 888.

The Supreme Court's decision in *Holland* also mirrors the instant case. There, the Supreme Court held that the petitioner had been essentially abandoned by his attorney where counsel failed to timely file Holland's petition despite his many requests to do so, failed to inform Holland about the outcome of his state post-conviction proceedings despite Holland's pleas for that information, and failed to communicate with his client at all for some time despite Holland's many attempts to contact him. *Holland*, 560 U.S. at 652.

We conclude that Whipple's conduct amounted to an extraordinary circumstance that caused Perez's delayed filing. Indeed, the facts here strongly resemble (and in some

ways are more egregious than) the extraordinary circumstances found in *Rudin*, *Gibbs*, and *Holland*.

Between December 2013, when Perez learned that her state petition had been denied, and September 2014, when Perez surmised that she had been abandoned, she reasonably expected and relied upon Whipple to pursue an appeal, which she repeatedly instructed him to file. Although Perez had been told that Whipple would send her a letter explaining her options following the state court's denial, he never followed through. Instead, Perez was the one who followed up, calling Whipple over and over again to check on the status of her appeal. Whipple never responded.

For roughly nine months, Perez was left in the dark about the status of her case. She had instructed her attorney to appeal but could not reach him to determine whether he had done so. Though Whipple had promised to be in touch regarding Perez's options, and though he had a professional obligation to keep his client apprised of developments in her case, Whipple failed to communicate with Perez whatsoever. These circumstances left Perez with "no clue of 'any need to protect herself pro se.'" *See Rudin*, 781 F.3d at 1056 (alteration accepted) (quoting *Maples*, 565 U.S. at 271). And although Perez could have in theory contacted the state court to see whether a written order had been issued, or whether an appeal had been filed on her behalf, she was under no obligation to do so given that she was represented by Whipple and could reasonably expect to be kept abreast of developments in her case. *See Gibbs*, 767 F.3d at 885–88.

Though Perez surmised that she had been abandoned and began working on a pro se federal habeas petition by September 14, 2014, the extraordinary circumstances did not abate. Whipple's misconduct continued to prevent Perez's

timely filing for at least two reasons. First, at no point during his representation did Whipple ever inform Perez of the AEDPA deadline for her federal habeas petition. While it is true that the mere miscalculation of a deadline cannot produce an extraordinary circumstance, *Holland*, 560 U.S. at 651–52, Whipple had "an ethical duty to take 'steps to the extent reasonably practicable to protect [Perez's] interests' if he had ceased representing [her]," *Gibbs*, 767 F.3d at 890 (quoting Nev. R. Prof. Conduct 1.16(d)). Moreover, Whipple had affirmatively promised to inform Perez of her options going forward. *See id.* at 887. Making good on either obligation would have necessarily included a discussion of the AEDPA deadline. Relatedly, Whipple failed to provide Perez with any of the state court's written orders pertaining to her denial despite her requests for that information, making it all but impossible to calculate the new AEDPA deadline. *See id.* at 886 (explaining that "a prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling" (internal quotation marks omitted)). Perez was therefore worse off than she would have been had she pursued her state post-conviction relief pro se, in which case "[s]he would have been entitled to notification from the court" directly about the final resolution of her case. *Id.*

Second, even after Whipple abandoned Perez, he failed to return her case file.[3] We have held that "a complete lack

---

[3] The dissent faults us for manufacturing this argument on behalf of Perez, citing the familiar principle of party presentation. Dissent at 43 n.7. But it has never been true that principles of waiver and forfeiture operate at such microscopic units of argumentation. *See, e.g.*, *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) ("[I]t is claims that are deemed waived or forfeited, not arguments."). We are

of access to a legal file may constitute an extraordinary circumstance, [because] . . . it is unrealistic to expect a habeas petitioner to prepare and file a meaningful petition on his own within the limitations period without access to his legal file." *Id.* at 889 (internal quotation marks omitted); *see also Rudin*, 781 F.3d at 1056.

Notwithstanding the dissent's acknowledgement, at 38–39 n.4, that Whipple abandoned Perez, the dissent appears to contest both the existence of an extraordinary circumstance and its causal connection to Perez's delay in filing. First, the dissent resorts to a selectively narrow characterization of Whipple's abandonment to downplay his misconduct as a garden variety miscalculation. Relying on *Miranda v. Castro*, 292 F.3d 1063 (9th Cir. 2022), the dissent argues that Whipple's "failure to advise Perez of the deadline to file her federal habeas petition" did not pose an extraordinary circumstance. Dissent at 43. *Miranda* was not a case about attorney abandonment, however. *Miranda* stood for the common sense proposition that a habeas petitioner cannot claim equitable tolling based on erroneous advice from an individual who is no longer his counsel. *Id.* at 1067–68. We find implausible the dissent's suggestion that Whipple's misconduct was irrelevant to Perez's *federal* petition for post-conviction relief simply because he represented her in connection with *state* proceedings for post-conviction relief. A sweeping rule of that nature is foreclosed by our

---

hardly stepping into the litigants' ring when Perez has clearly argued, below and on appeal, that Whipple abandoned her by, among other things, failing to communicate with her. Failure to communicate entails failure to transmit legal files. Our cases on equitable tolling instruct that lack of access to legal files is a significant consequence of such abandonment. We would be remiss to turn a blind eye to that aspect of Perez's circumstances.

precedents granting equitable tolling for federal habeas petitioners who were no longer represented by their state post-conviction counsel. *See Rudin*, 781 F.3d at 1051–53; *Gibbs*, 767 F.3d at 884.

Second, the dissent argues that Whipple's abandonment did not cause Perez's delay in filing. As explained above, causation under the extraordinary circumstances prong overlaps with reasonable diligence, which does not impose a rigid standard of impossibility. *See Smith*, 953 F.3d at 600. The dissent's argument therefore equates to the position that Perez was unreasonably idle during and after the existence of the extraordinary impediment. The dissent provides two reasons in support: (1) Perez could have figured out the filing deadline on her own, and (2) she had sufficient time to file her petition regardless of Whipple's conduct. The first reason is not born out by the facts in the record; the second reason grafts an unprecedentedly strict causation requirement onto the extraordinary circumstances analysis.

The dissent reads a lot into the fact that Perez attended the hearing on December 5, 2013, when the state court orally denied her state post-conviction petition. Dissent at 44 & n.8. It is unclear how this attendance could have given Perez any information about when the state court would file the Notice of Entry of Order, which is the relevant date for calculating the tolling period under AEDPA. *See* 28 U.S.C. § 2244(d)(2). Perez attested that she never received this notice, and the State never seriously disputed this point.[4]

---

[4] The State mistakenly argues, as does the dissent, that whether Perez received the notice is irrelevant because she was present at the December 5 hearing. The State then speculates, based on prison mail logs from January 8, 2014, that Perez might have received the state court's decision

Perez's much-belated attempt to appeal the denial of her state petition in September 2014 offers further proof of that fact. For all Perez knew during the several months following the hearing, the state court had not yet entered its written order, or Whipple was dutifully working on the appeal (as she instructed him to do several times), thereby further tolling the AEDPA clock. Notwithstanding the State's own concession during oral argument that Perez was likely unaware of the December 1 deadline, the dissent insists that knowledge of AEDPA's one-year limitations period by itself was somehow enough information for Perez to deduce that date.[5]

The dissent's bigger mistake lies in importing an unduly harsh standard of impossibility into the analysis of extraordinary circumstances. Because Perez still had two-and-a-half months after realizing that Whipple had

---

on that day. No evidence backs this conjecture. In any case, both the written order and the notice of entry were filed after January 8, so whatever mail Perez received on January 8 could not have been pertinent to calculating the tolling period. *See supra* note 1.

For the dissent, Perez's sworn affidavit that she "has no denial documents" is not good enough as an indication that she did not receive the written order and the notice of entry. Dissent at 45. We are puzzled as to what else those words could mean; the State certainly does not offer an alternative interpretation.

[5] The dissent also takes pains to stress that Perez likely believed her federal habeas deadline to be December 5, 2014, one year after the state court hearing. Even if that were an accurate venture into Perez's mind, we fail to see its relevance. The fact that Perez was able to act with reasonable diligence in accordance with what she believed to be the deadline only underscores the egregious impact of Whipple's failure to inform her of the actual deadline.

abandoned her,[6] the dissent claims, Whipple's conduct did not prevent her from timely filing the federal habeas petition. Dissent at 48–50. The dissent draws no specific comparisons to any of our precedents on reasonable diligence, despite our obligation to be "guided by decisions made in other similar cases." *Smith*, 953 F.3d at 599 (internal quotation marks omitted). Neither does the dissent refute the similarities between the reasonableness of Perez's actions and the precedents where we recognized reasonable diligence, which we discuss below. Instead, the dissent appeals solely to the amount of time that remained on the AEDPA clock after Perez's extraordinary impediment was lifted, claiming that "Perez had sufficient time to file her habeas petition after she concluded that Whipple had abandoned her." Dissent at 40; *see also* Dissent at 48 ("Perez does not explain why she did not have sufficient time to file her federal habeas petition . . . ."); Dissent at 49 ("[Perez] had ample time to complete the form habeas petition . . . .").

We have unequivocally rejected the dissent's approach. *See Smith*, 953 F.3d at 599 n.9 ("Nor do we announce a rule that any time long stretches of time pass without a petitioner acting on a habeas petition is it necessarily a situation where a petitioner failed to exercise reasonable diligence." (citing

---

[6] The dissent suggests that we should treat August 6, 2014 (the date when Perez last contacted Whipple's office) as the point at which Perez realized that Whipple abandoned her and that she therefore needed to "protect herself." *Rudin*, 781 F.3d at 1056; Dissent at 40 n.5. We decline to take that leap of inference. It is possible that Perez stopped reaching out to Whipple after that date simply because she was continuing to wait—as she had already been doing for several months—for Whipple to follow up on his promise to contact her. A more reliable benchmark is the day when Perez actually began working on a pro se federal habeas petition, which is September 14, 2014.

*Huizar v. Carey*, 273 F.3d 1220, 1224 (9th Cir. 2001))); *Huizar*, 273 F.3d at 1224 (describing a petitioner as reasonably diligent even when he waited 21 months to hear from a state court before seeking an update); *see also Smith*, 953 F.3d at 601 ("We have no trouble imaging a circumstance where a petitioner is impeded by extraordinary circumstances from working on a habeas petition for two months, but after those circumstances are dispelled, uses the next 364 days diligently. . . ."). The fact that Perez had enough time to "fill out a form document" is not the end point of our inquiry. Dissent at 49. *Cf. Gibbs*, 767 F.3d at 891 (rejecting the State's argument that it would have taken petitioner ten minutes to "slap a new coversheet" to his state post-conviction briefs). A single day may theoretically be enough time to go through the motions of performing that task, yet we would not for that reason alone foreclose equitable tolling where an extraordinary circumstance impeded the petitioner for all but the final day of the one-year limitations period. In any event, the lingering effects of Whipple's abandonment persisted past September 2014.

The dissent overreads *Smith*. It is true that in rejecting the stop-clock approach to equitable tolling, we held that a petitioner's diligence after the abatement of the extraordinary circumstance matters. *Smith*, 953 F.3d at 599. But in the same breath, we also clarified that "this does not alter what it means for a petitioner to exercise diligence." *Id.* Put differently, *Smith* altered the scope of diligence, not its standard. The dissent is thus incorrect in suggesting that any precedent on reasonable diligence preceding *Smith* is irrelevant. The dissent would effectively eviscerate the reasonable diligence prong of the test for equitable tolling. If the existence of an extraordinary circumstance depends on a showing that the petitioner could not have feasibly overcome

the circumstance with more laborious efforts, then any separate inquiry into diligence would be rendered meaningless. The dissent mistakenly states that *Smith* requires such an approach. Dissent at 50. To the contrary, that approach would logically commit us to requiring "maximum feasible diligence"—precisely what the Supreme Court rejected. *See Holland*, 560 U.S. at 653 (internal quotation marks omitted).

The correct causation inquiry hinges on whether Perez acted with reasonable diligence throughout all times in filing her petition. As we go on to explain below, the answer to that question is yes. The dissent's error lies in trying to circumvent this result by subjecting Perez to a more demanding standard of diligence under the guise of a causation requirement with no limiting principle.

Beyond the obstacles stemming directly from Whipple's abandonment, Perez faced another extraordinary circumstance that contributed to her delayed filing: the prison's handling of her financial certificate. Weeks before the actual AEDPA deadline, Perez requested the financial certificate that needed to be filed alongside her federal habeas petition. *See Grant v. Swarthout*, 862 F.3d 914, 925 (9th Cir. 2017) (discussing Rules Governing Section 2254 Cases in the United States District Courts, under which federal habeas petitioners proceeding *in forma pauperis* "*must*" file their petition with a financial certificate). The prison erroneously told her that her request was "[d]one." Perez deduced that this was inaccurate and renewed her request, and on December 1, her request was submitted to Inmate Banking. Several days later, and weeks after her initial request, Perez learned that the certificate remained in limbo due to processing issues. By December 8, when Perez

finally was able to file her federal habeas petition, the financial certificate was still unavailable.

We considered a nearly identical scenario in *Grant v. Swarthout*. There, a federal habeas petitioner requested a financial certificate from the prison seven days before the AEDPA filing period was set to expire. *Id.* at 917. Due to circumstances beyond Grant's control, he did not receive the certificate until 21 days after the AEDPA deadline, whereupon he promptly filed his petition. *Id.* As the record demonstrated that the "prison officials' delay was the cause of Grant's petition being untimely," we concluded: "Where a prisoner is dependent on prison officials to complete a task necessary to file a federal habeas petition and the staff fails to do so promptly, this constitutes an extraordinary circumstance." *Id.* at 926.[7]

Perez was entirely dependent upon prison officials to process her financial certificate, and their delay caused her late filing. Moreover, the circumstances Perez faced were even more extraordinary than those present in *Grant*. Perez made her first request for a financial certificate on November 12, 2014, 19 days before the AEDPA deadline, and was affirmatively misled to believe that her request had been handled. When she followed up eight days before the deadline on November 23, it took until December 2 for her to receive notice that her request had been submitted to Inmate Banking. Though she sought to mail her petition the following day, she "was told [she] couldn't mail [her] petition because there was a delay processing [her] financial

---

[7] In *Grant*, we applied the stop-clock approach, which we later rejected sitting en banc. *See Grant*, 862 F.3d at 918; *Smith*, 953 F.3d at 599. The holding we cite today from *Grant* did not depend on the stop-clock approach.

certificate."**[8]** Not content to sit idly by while she waited for the prison to follow up, Perez sought to file the petition

---

[8] The dissent accepts and elaborates on the State's argument that Perez's own failure to properly complete a request form caused the delay. Dissent at 56–58. This misses the point. The fact remains unchanged that Perez requested the financial certificate 19 days before the AEDPA deadline and was thereafter "dependent on prison officials" to process the form in time, *Grant*, 862 F.3d at 926, which they failed to do. We have previously cautioned against imposing too exacting a standard on pro se prisoner litigants requesting equitable tolling. *See Smith*, 953 F.3d at 600. We have also emphasized that the purpose of equitable tolling is to "prevent the unjust technical forfeiture of causes of action." *Grant*, 862 F.3d at 921 (quoting *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004)). If it indeed is the case that Perez initially submitted an incomplete request form, the record indicates that it was an unfortunate anomaly, as she was elsewhere scrupulous about including proper identifying information on forms submitted to the prison as well as to courts. Moreover, Perez's petition exceeded the deadline only by one week. To deny Perez even the opportunity to argue her case on the merits solely based on a single alleged omission of a signature strikes us as the quintessential example of an "unjust technical forfeiture," especially where the prison took eight days to respond to Perez's initial request, and still another 13 days after that to inform her of a delay in processing the certificate.

It is hard to miss the irony of the dissent's efforts to complement the State's inadequate briefing before us. In support of its assertion that Perez submitted an incomplete request form, the State only cites its own brief before the district court, so normally, we would presume that this is the only authority "on which the [appellee] relies." Fed. R. App. P. 28(a)(8)(A). The State acknowledged during oral argument that it neglected to include the pertinent exhibits on appeal and apologized for this "inadvertent mistake." The State offered to follow up with a citation of supplemental authorities to rectify this omission; it never did. *See* Fed. R. App. P. 28(j) ("If pertinent and significant authorities come to a party's attention after the party's brief has been filed—or after oral argument but before decision—a party may *promptly* advise the circuit clerk by letter . . . ." (emphasis added)). Notwithstanding this technical

without a financial certificate. Although she "worried [her] federal petition was incomplete or would be rejected because [she] didn't have all [her] records," Perez "didn't want to wait to file it." Even here, Perez was stymied by factors beyond her control: citing staffing issues, the prison rescheduled her library appointment—without which Perez could not mail out legal documents, per prison policy—from December 5 to December 8, the day when she filed the petition.

We further conclude that the prison officials' delay in processing her request for a financial certificate was a contributing cause of Perez's petition being untimely. Had the financial certificate been provided at any point during the 19 days which elapsed between Perez's request and the end of the limitations period, Perez's petition could have been timely filed. *See id.* at 926. Moreover, as the dissent outlines in detail, Perez was more than reasonably diligent both before and during the pendency of her request for the financial certificate: she scheduled multiple appointments with the prison law library to work on her petition from September to December 2014, *see* Dissent at 53–54 n.15, 55 n.16, and she carefully prepared supporting documents to accompany her federal habeas petition once she decided to file without waiting for the financial certificate, *see* Dissent at 60.

It is of no moment that Perez ultimately filed her petition without receiving her financial certificate. We have previously rejected the Catch-22 this would create for prisoners: "That some pro se prisoner would take the risk of

---

mistake, the dissent on its own initiative collects the records that the State never bothered to present to us, all while insisting that Perez must pay for her technical mistake.

filing a petition without an account certificate and have the good fortune of receiving a conditional dismissal is insufficient to overcome the equitable principle that inmates should not be forced to choose between submitting an incomplete petition or an untimely one because of prison officials' failure to provide prisoners with needed documents." *Id.* at 926 n.10. Perez's willingness to ultimately risk filing an incomplete petition does not convert the prison's failure to provide a necessary and requested component of her federal habeas petition within the limitations period into anything less than an extraordinary circumstance.

Considering Whipple's abandonment, which prevented her from pursuing federal habeas relief through at least September 14, 2014 (when Perez began working on her pro se petition), his continued misconduct after he abandoned Perez (including failing to inform Perez of the AEDPA deadline and failing to return her legal file), and the restraints to filing imposed by the prison, we conclude that Perez faced extraordinary circumstances which prevented her timely filing through at least December 1, 2014. We thus proceed to the question of whether Perez also demonstrated reasonable diligence.

### B. Reasonable Diligence

"In determining whether reasonable diligence was exercised courts shall 'consider the petitioner's overall level of care and caution in light of his or her particular circumstances . . . .'" *Smith*, 953 F.3d at 599 (quoting *Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011)). "[F]or a litigant to demonstrate he has been pursuing his rights diligently . . . he must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing

caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Id.* at 598–99 (citation and internal quotation marks omitted). The level of diligence required is "reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (citations and internal quotation marks omitted).

In line with our clarification in *Smith* that diligence must be evaluated "in all time periods—before, during, and after the existence of an 'extraordinary circumstance,'" we assess Perez's diligence at each stage in turn. *Smith*, 953 F.3d at 595 (citing *Gibbs*, 767 F.3d at 892).

### 1.  Pre-Obstacle Diligence

Prior to the extraordinary circumstance of Whipple's abandonment, Perez acted diligently. Within three months of her state court conviction becoming final, Perez filed a pro se state habeas petition, stopping the AEDPA clock. That is sufficient to show diligence before the extraordinary circumstances. *See Gibbs*, 767 F.3d at 892 ("Also relevant is whether petitioner[] 'pursued [her] claims within a reasonable period of time *before* the external impediment . . . came into existence.'" (ellipsis in original) (quoting *Roy v. Lampert*, 465 F.3d 964, 972 (9th Cir. 2006))); *Grant*, 862 F.3d at 919 ("[A] petitioner is entitled to use the full one-year statute-of-limitations period for the filing of his state . . . habeas petition[] and . . . he need not anticipate the occurrence of [extraordinary] circumstances . . . .").

### 2.  Diligence Simultaneous with the Obstacle

Following the denial of her state petition, Perez continued to act diligently by instructing her attorney to appeal. Had Whipple done so, Perez would have been

entitled to statutory tolling of the AEDPA deadline. Perez cannot be faulted for failing to independently pursue pro se federal habeas relief during the period in which she was represented by counsel who she "reasonably [] believed . . . was going to assist [her] in federal court." *Gibbs*, 767 F.3d at 888–89; *cf. Rudin*, 781 F.3d at 1057 ("For all Rudin knew . . . Rudin's state-court petition had already been filed, making her eligible for statutory tolling under § 2244(d)(2)."). Until it became clear that Whipple had abandoned her, Perez "lacked a clue of any need to protect herself." *Rudin*, 781 F.3d at 1057 (internal quotation marks omitted). Contrary to the State's claims, she did not fail to exercise reasonable diligence by "failing to take action until shortly before her AEDPA limitations period expired." We will not fault a prisoner who is represented by counsel for not preparing her own federal habeas petition on a parallel track when she reasonably expects her attorney to be pursuing relief on her behalf. To do so would "improperly raise[] the standard from 'reasonable' to 'maximum feasible' diligence." *Gibbs*, 767 F.3d at 891 (quoting *Holland*, 560 U.S. at 653).

Moreover, Perez did not simply twiddle her thumbs while her case stagnated. She made extensive and persistent efforts to contact her attorney and inquire about her case. From March until August 2014, Perez called Whipple's office 15 times—nearly every month, and sometimes multiple times in a month— seeking clarity on the status of her appeal. The steps taken by Perez during this time were virtually identical to those taken by the petitioner in *Rudin*, who "made repeated attempts to contact [her attorney] . . . and requested that he provide her with copies of her files so that she could take additional steps on her own behalf," 781 F.3d at 1056, and which we found to be reasonably diligent.

Like the petitioner in *Rudin*, Perez "was 'reasonably diligent' during the period of [Whipple's] representation." *Id.*

Nonetheless, the district court found Perez's effort lacking, noting that while "Perez made several attempts to contact Whipple by telephone, she did not attempt to contact the Supreme Court of Nevada regarding the status of the purported state postconviction appeal." We rejected such an argument in *Gibbs*, explaining that while it was "technically possible for Gibbs to write to the Nevada Supreme Court daily to ask about the status of his state . . . petition, he had no obligation or reason to do so, given that he was represented and had, moreover, been specifically promised by his lawyer prompt notice of any decision." 767 F.3d at 888. Instead, we concluded that the petitioner had displayed reasonable diligence in repeatedly attempting to contact his attorney during the period in which he was represented. *Id.* at 890. The same is true here.

### 3. Post-Obstacle Diligence

Following Whipple's abandonment, Perez continued to exercise reasonable diligence in pursuing federal habeas relief on her own. The record reflects that between September 14, 2014, and December 8, 2014, when the petition was ultimately filed, Perez took prompt and consistent steps to prepare the petition. Perez made repeated requests to the prison and the state district court to obtain materials necessary for her petition. She sought several appointments with the law library, where Vandecar, a fellow inmate, helped her to draft and file the petition. She worked in her cell with limited materials, due to prison regulations and Whipple's failure to return her file. Even the kites Perez submitted, marked "Time Sensitive" and seeking an

appointment "as soon as possible," demonstrate the urgency with which she was proceeding.

Perez was also diligent in seeking a financial certificate to file alongside her federal petition. She made at least two attempts to obtain the financial certificate prior to the AEDPA deadline, which we found to be reasonably diligent in *Grant*. 862 F.3d at 924. But Perez was even more diligent than the petitioner in *Grant*, who waited until seven days before the deadline to request his financial certificate, *id.* at 923–24; she made her first request 19 days before the deadline and renewed her request a second time with eight days remaining in the limitations period. As we found the lesser conduct reasonably diligent in *Grant*, we conclude that Perez's conduct was reasonably diligent here. *See id.*

Perez also declared that she "didn't know when [her] federal petition was due." Calculating limitations periods under AEDPA has often presented a challenge even for lawyers and judges. There is nothing in the record to suggest that Perez was actually aware of the December 1, 2014, deadline or that she could have figured out that deadline based on the information available to her. Indeed, the State conceded at oral argument that Perez probably did not know the actual deadline was December 1. Even accepting the dissent's suggestion that Perez mistakenly thought her deadline was December 5, *see* Dissent at 46, the prison again prevented her from meeting *that* deadline by unpredictably rescheduling her library appointment from December 5 to December 8. Under these circumstances, her near miss of the deadline and ultimate attempt to file a petition without the necessary financial certificate does not suggest unreasonable

delay on her part.[9] As her declaration attests, she "was worried that [her] federal petition was incomplete or would be rejected because [she] didn't have all her records, but [she] also didn't want to wait to file it." In that context, the brisk pace of her work appears all the more reasonable. Even though she did not know the extent to which she was facing a time crunch, she nonetheless proceeded with deliberate speed to ensure that her rights were protected.

Our conclusion that Perez exercised reasonable diligence following the extraordinary circumstances is supported by precedent. In *Smith*, we explained that "it is not enough for a petitioner seeking an exercise of equitable tolling to attempt to diligently remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing

---

[9] The State suggests that Perez did not act with reasonable diligence regarding the financial certificate since she did not ultimately mail the certificate to the district court until June 2015, some six months after she filed her federal habeas petition without it. But as we have explained, a petitioner's diligence is measured only "up to the time of filing [her] claim in federal court." *Smith*, 953 F.3d at 599. That Perez may not have been diligent in submitting her financial statement when it became available to her *after* she filed her petition is irrelevant to the equitable tolling inquiry. Furthermore, as explained above, we decline to force prisoners to choose between the rock of filing without a necessary certificate and the hard place of delaying their filing until the certificate becomes available.

The district court accepted the federal petition for filing without Perez's financial certificate. The State's argument would have more force if the district court had conditionally dismissed Perez's petition pending receipt of the financial certificate; had it done so, Perez would have been expected to cure the deficiency as quickly as possible. But because the petition was accepted and docketed without the certificate, Perez's delay in filing the certificate does not undermine her showing of diligence.

his rights." 953 F.3d at 599. That case involved a petitioner whose appellate counsel had (at least arguably) abandoned him by failing to contact him for five months after his state appeal was denied. However, once the extraordinary circumstance was lifted and Smith received his appellate record from his attorney, he waited 364 days to file a federal habeas petition. The petition was nearly identical to his previous state filings. *Id.* at 600–01.

*Smith* made clear that "[t]he problem with Smith's request for equitable tolling is not simply that he took 364 days after receiving his case file to file his habeas petition." *Id.* at 601. Instead, the problem was that "Smith alleged no facts, argued no circumstances, and made no claim that he had been diligent in preparing his habeas petition after he had received his file from his attorney." *Id.* We expressed "no trouble imaging" a circumstance where a petitioner might diligently use 364 days following an extraordinary circumstance but stressed that the touchstone "in every instance" is that "reasonable diligence seemingly requires the petitioner to work on his petition with some regularity— as permitted by his circumstances—until he files it in the district court." *Id.*

Without question, Perez satisfied this requirement. She worked on her petition with regularity, as permitted by her circumstances—marked by the lack of a prison law librarian, limited access to the law library, restrictions on her ability to access legal materials in her cell, the prison's failure to promptly provide her with a financial certificate, her inability to acquire her full case file from her attorney, and her lack of access to materials which would enable her to calculate the appropriate AEDPA deadline—from the moment she realized that she had been abandoned until she filed her petition.

Emphasizing that the petitioner in that case had filed his federal habeas petition "the *very day* that [he] discovered his AEDPA clock had expired due to [his attorney's] failings," *Holland*, 560 U.S. at 653, the district court concluded that "Perez makes no such showing of diligence." We disagree with the district court's characterization of *Holland*. As *Smith* underscored that no particular time period preceding the filing of a federal habeas petition is inherently reasonable or unreasonable, we do not think that *Holland* established a fixed threshold for reasonable diligence. The conduct in *Holland* demonstrated "remarkable diligence," *Gibbs*, 767 F.3d at 891, and did not set a standard against which all future diligence was to be compared. Rather, the reasonable diligence determination must be "guided by decisions made in other similar cases . . . with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Smith*, 953 F.3d at 599 (internal quotation marks omitted). Our holdings in similar cases support the conclusion that Perez acted with reasonable diligence.

In *Gibbs*, we held that a prisoner who had taken "slightly more than two months to prepare his federal habeas petition" after finally receiving his legal files from the attorney who had abandoned him had shown reasonable diligence. 767 F.3d at 893. In *Rudin*, we held that a petitioner had shown reasonable diligence by "wait[ing] only three months" to have her attorney assemble and file a federal habeas petition following an extraordinary circumstance which had prevented her filing. 781 F.3d at 1059. Perez filed with similar promptness even in the face of much direr circumstances than those present in *Gibbs* and *Rudin*. In just over three months, Perez was able to pull together and file a federal habeas petition. She managed to do so without

counsel, without complete access to her legal file, without consistent access to the law library or to a librarian, and without prompt action from the prison to provide her with necessary material for filing. As in *Rudin* and *Gibbs*, that effort was reasonably diligent.

Lastly, we observe that the seven-day delay here is minimal compared to others that received the benefits of equitable tolling. *See Rudin*, 781 F.3d at 1053 (petition filed seven years after the deadline); *Huizar*, 273 F.3d at 1223 (three years); *Spitsyn*, 345 F.3d at 799 (226 days); *Gibbs*, 767 F.3d at 884 (193 days); *Fue*, 842 F.3d at 653 (107 days); *Grant*, 862 F.3d at 917 (21 days). Equity, which requires careful attention to the individual facts of each case, shall not be deaf to Perez's extraordinary circumstance.

## IV.  Conclusion

Because Perez satisfies the requirements for equitable tolling, her federal habeas petition should not have been dismissed as untimely. We note that our decision does not grant Perez substantive relief or order her release. We simply conclude that she should have an opportunity to present her arguments for habeas relief to the court for its consideration.

We reverse and remand for further proceedings consistent with this opinion.[10]

**REVERSED AND REMANDED.**

---

[10] Having held that Perez is entitled to equitable tolling, we need not reach her additional arguments that she is also entitled to statutory tolling under 28 U.S.C § 2244(d)(1)(B).

BADE, Circuit Judge, dissenting:

Petitioner-Appellant Gladys Perez acknowledges that she filed her § 2254 federal habeas corpus petition after the limitations period expired, and thus her petition is untimely. *See* 28 U.S.C. § 2244(d)(1). Perez argues, however, that she is entitled to statutory and equitable tolling of the limitations period because she was abandoned by her post-conviction counsel, and prison staff failed to timely process a financial certificate. The majority accepts Perez's arguments and concludes that equitable tolling excuses Perez's untimely filing because her delay resulted from "extraordinary circumstances" beyond her control. Maj. Op. 2. The record belies this conclusion, and it is factually inaccurate to suggest that the conduct of either Perez's post-conviction counsel or prison staff caused the late filing. I respectfully dissent.

I

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), federal habeas corpus petitions filed by state prisoners are subject to a one-year statute of limitations, which begins to run at the conclusion of direct review of the criminal conviction. § 2244(d)(1)(A). Among other reasons, that period shall be statutorily tolled when state post-conviction remedies are pending, § 2244(d)(2), or when impediments caused by unconstitutional or illegal state action prevent timely filing, § 2244(d)(1)(B).[1]

---

[1] The majority does not reach Perez's statutory tolling arguments because it concludes that Perez is entitled to equitable tolling. Maj. Op. 33 n.10. Statutory tolling under § 2244(d)(1)(B), like equitable tolling,

The limitations period also may be equitably tolled "when an extraordinary circumstance prevented a petitioner from filing before the deadline expired." *Smith v. Davis*, 953 F.3d 582, 595 (9th Cir. 2020) (en banc). "[T]he petitioner bears the burden of showing that equitable tolling is appropriate." *Blackman v. Cisneros*, 122 F.4th 377, 381 (9th Cir 2024) (alteration in original) (quoting *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006)). "Equitable tolling is justified in few cases . . . ." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). And "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (alteration in original) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

To obtain equitable tolling, a petitioner must establish two elements: "'(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). We have long recognized that the second element includes a causation

---

requires a petitioner to "show a causal connection between the unlawful impediment and [her] failure to file a timely habeas petition." *Bryant v. Ariz. Att'y Gen.*, 499 F.3d 1056, 1060 (9th Cir. 2007). But statutory tolling requires a petitioner to "satisfy a far higher bar than that for equitable tolling." *Ramirez v. Yates*, 571 F.3d 993, 1000 (9th Cir. 2009). For statutory tolling to apply, Perez must establish that prison staff, as state actors, created an unconstitutional or unlawful impediment that prevented her from timely filing her petition. § 2244(d)(1)(B). Because Perez has not established a causal connection between her untimely filing and the conduct of her counsel or prison staff, she is not entitled to equitable tolling, and she also cannot meet the higher standard for statutory tolling.

requirement.  *See, e.g.*, *Spitsyn*, 345 F.3d at 799 (explaining that the petitioner "must show that the 'extraordinary circumstances' were the cause of [her] untimeliness" (quoting *Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003))).  And in *Smith*, we noted that the Supreme Court had made the causation requirement explicit.  953 F.3d at 595 ("In *Holland*, the Court added an explicit causation requirement to the rule for equitable tolling previously stated in *Pace*." (citing *Holland*, 560 U.S. at 649)).  Thus, a petitioner seeking equitable tolling of the AEDPA deadline must demonstrate that "extraordinary circumstances were the cause of an untimely filing."  *Id*. at 589 (citations omitted).

Unlike statutory tolling, which stops the limitations clock during periods enumerated in the statute, equitable tolling does not stop the limitations clock during periods of extraordinary circumstances.  *Id.* at 599 (stating that "we today reject the stop-clock approach").  Instead, we held in *Smith* that to "satisf[y] the first element required for equitable tolling, [a petitioner] must show that [s]he has been reasonably diligent in pursuing [her] rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing [her] claim in federal court."  *Id*. at 598–99.

Moreover, as we explained in *Smith*, "[t]hough the causation requirement announced in *Holland* modified the extraordinary circumstance prong of the test, it nevertheless [also] speaks to the diligence required by a petitioner seeking equitable tolling."  *Id*. at 595; *see also Spitsyn*, 345 F.3d at 802 ("[I]f the person seeking equitable tolling has not exercised reasonable d[i]ligence in attempting to file, after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to

file is broken." (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000))). Thus, determining whether an extraordinary circumstance caused a petitioner's untimely filing will often overlap with the examination of the petitioner's diligence. *See Smith*, 953 F.3d at 596.

Importantly, *Smith* also clarified the standard for the causation requirement in the second element of the equitable tolling analysis: "The only way for a court to evaluate whether an extraordinary circumstance caused the untimely filing is to examine and assess the facts of the case to determine whether a petitioner acting with reasonable diligence could have filed [her] claim, despite the extraordinary circumstance, before the limitations period expired." *Id*. at 595. Before *Smith*, our case law had not clearly defined the causation standard.[2] Smith remedied this imprecision. 953 F.3d at 595.

Thus, for equitable tolling to apply here, Perez must establish that her failure to timely file her federal habeas petition was caused by an extraordinary circumstance resulting from the conduct of her post-conviction counsel and prison staff. *See Holland*, 560 U.S. at 649; *Smith*, 953 F.3d at 595; *Spitsyn*, 345 F.3d at 799. And to decide whether Perez has satisfied the causation requirement, we must "examine and assess the facts" to determine whether Perez "could have filed [her] claim, despite the extraordinary circumstances, before the limitations period expired" if she

---

[2] Instead, in *Stillman*, we concluded that the petitioner was entitled to equitable tolling because "prison officials' misconduct proximately caused the late filing." 319 F.3d at 1203. In *Spitsyn*, we cited the Second Circuit's explanation that a petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of [her] filing." 345 F.3d at 799 (quoting *Valverde*, 224 F.3d at 134).

had acted with "reasonable diligence." *See Smith*, 953 F.3d at 595.  As detailed in the following discussion, Perez has not made this showing, and the district court correctly dismissed the petition as barred by the AEDPA statute of limitations.

## A

Perez first argues that she was "abandoned" by her post-conviction counsel Bret Whipple and, therefore, equitable tolling of the limitations period for her federal habeas petition is warranted.  Perez argues that after the state trial court denied post-conviction relief, Whipple did not "inform [Perez] of her options," did not "provide her with a copy of the court's written order," and did not "perfect the appeal" of the denial of state post-conviction relief.[3]  The majority concludes that Whipple's conduct constitutes an extraordinary circumstance for purposes of equitable tolling and that it caused Perez's delayed filing.  Maj. Op. 12.  But even assuming Whipple's conduct constituted an extraordinary circumstance for purposes of equitable tolling,[4] the record establishes that counsel's conduct did not

---

[3] Counsel's failure to file a direct appeal from a denial of post-conviction relief is not an extraordinary circumstance warranting equitable tolling. *See Randle v. Crawford*, 604 F.3d 1047, 1058 (9th Cir. 2010) ("Counsel's failure to perfect an appeal simply meant that [the petitioner] had one year from the expiration of his time to file a notice of appeal in which to initiate a federal habeas action—it did not prevent him from filing the petition.").  Thus, Perez is not entitled to equitable tolling on this basis because it did not prevent her from timely filing her federal habeas petition.  *See id.*

[4] The majority appears to overlook this explicitly stated assumption that Whipple abandoned Perez and that such abandonment can be an extraordinary circumstance.  Maj. Op. 16 (stating that "the dissent

prevent Perez from filing her federal habeas petition within the limitations period.

Indeed, "examin[ing] and assess[ing] the facts," *Smith*, 953 F.3d at 595, establishes that: (1) Perez knew that the state court orally denied her petition for post-conviction relief on December 5, 2013; (2) at that time, she understood she could appeal that denial in state court and that she could also file a federal habeas petition; (3) by September 14, 2014, at the latest, she had concluded that post-conviction counsel had abandoned her and that she needed to act to protect her interests; (4) she prepared her state court appeal first and mailed it for filing on September 25, 2014; (5) over a month later, on October 29, 2014, she requested forms for her federal habeas petition from the prison library and received the forms that same day; (6) the forms advised her of the one-year statute of limitations to file her federal habeas petition; (7) she asserts that she had completed her habeas petition and could have filed it by November 20, 2014 if she had her financial certificate; (8) she did not request a date to mail the petition until December 2, 2014, which was after the December 1, 2014 filing deadline had expired, and even then she asked to mail it on December 5, 2014, again after the filing deadline had expired; and (9) on December 8, 2014, she filed the petition without the financial certificate and it was accepted by the district court.

---

appears to contest . . . the existence of extraordinary circumstances"). To be clear, I do not dispute the majority's conclusion that Whipple abandoned Perez and that such abandonment can be an extraordinary circumstance warranting equitable tolling. Instead, as discussed in Sections I.A.1 and I.A.2, I dissent from the majority's conclusion that, even *after* Perez concluded that Whipple had abandoned her and knew that she needed to prepare a pro se habeas petition, "the extraordinary circumstances did not abate." Maj. Op. 14.

This timeline of events is conclusively established in the record, and the majority does not contest it.

Thus, as this timeline establishes, even though Perez had sufficient time to file her habeas petition after she concluded that Whipple had abandoned her—and even asserts that she finished her petition and was prepared to file it weeks before the end of the limitations period—she did not file it on time. Therefore, the "link of causation" between Whipple's conduct and Perez's failure to timely file her habeas petition was "broken" by her lack of diligence, *see Valverde*, 224 F.3d at 134, and she has not satisfied the causation requirement of the equitable tolling analysis.

1

To "examine and assess the facts," *Smith*, 953 F.3d at 595, I begin with the majority's conclusion that Perez "surmised that she had been abandoned and began working on a pro se federal habeas petition by September 14, 2014." Maj. Op. 14. Even accepting that Perez realized Whipple had abandoned her on that date,[5] she still had two-and-a-half months remaining before the deadline to file her federal habeas petition. Neither Perez nor the majority provide any

---

[5] After several failed attempts to contact Whipple, it appears Perez concluded that he had abandoned her around August 6, 2014, approximately four months before the December 1, 2014 deadline to file her federal habeas petition. Perez asserts that she repeatedly attempted to contact Whipple by calling his office in March, April, June, July, and August of 2014. And although Perez does not specify the date when she realized Whipple had abandoned her, she does say she gave up trying to contact him after her final call to his office on August 6 and started working on her appeal from the denial of state post-conviction relief and her federal habeas petition.

valid explanation why, with reasonable diligence, Perez was unable to file her federal habeas petition in that time.

Instead, as previously noted, *supra* n.4, the majority argues that "the lingering effects of Whipple's abandonment persisted past September 2014," and that "Whipple's misconduct continued to prevent Perez's timely filing" because he did not "ever inform Perez of the AEDPA filing deadline for her federal habeas petition." Maj. Op. 14–15, 21. The majority argues that because Whipple abandoned Perez, and thus ceased communicating with her, the extraordinary circumstances continued beyond September 14, 2014 (the date the majority acknowledges Perez knew Whipple was not representing her), "through at least December 1, 2014," (the AEDPA filing deadline). Maj. Op. 25. But *Smith* clarified that petitioners must demonstrate that they were diligent not only while extraordinary circumstances existed, but also "before and after the extraordinary circumstances were dispelled." 953 F.3d at 589. And attorney abandonment that constitutes an extraordinary circumstance is dispelled when a petitioner is aware of "the need to protect herself." *Rudin v. Myles*, 781 F.3d 1043, 1056 (9th Cir. 2015); *see also Gibbs v. Legrand*, 767 F.3d 879, 889 (9th Cir. 2014) (concluding that attorney abandonment constituted an extraordinary circumstance while it "obstruct[ed] [the petitioner's] ability to file [her] federal petition"). Here, Perez failed to establish that she was reasonably diligent after she determined that Whipple had abandoned her and she knew that she needed to "protect herself," which was by September 14, 2014, at the latest, and more than two-and-a-half months before the deadline to file her federal habeas petition. Maj. Op. 14, 19 & n.6.

Moreover, after she concluded that counsel had abandoned her, Perez was representing herself.**[6]** Whipple's failure to communicate deadlines to Perez when he was not representing her, and she was instead a pro se litigant, does not excuse Perez from the reasonable diligence requirement of equitable tolling. "[*P*]*ro se* status, on its own, is not enough to warrant equitable tolling." *Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006) (citing *Johnson v. United States*, 544 U.S. 295, 311 (2005)); *see also Johnson*, 544 U.S. at 311 ("[W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness . . . ."); *Rudin*, 781 F.3d at 1056 (applying the since-rejected stop clock analysis and concluding that the petitioner, who initially appeared pro se and then was represented by counsel who subsequently abandoned her, could not establish extraordinary circumstances existed to equitably toll the initial period during which she appeared pro se).

Finally, the majority acknowledges, as it must, that an attorney's miscalculation of the filing deadline is not an extraordinary circumstance justifying equitable tolling. Maj. Op. 15; *see, e.g., Holland*, 560 U.S. at 651–52 (explaining that "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling" (internal quotation marks and citations omitted)). And in *Miranda*, we rejected the petitioner's argument that he was

---

[6] Whipple was Perez's post-conviction counsel in state court, but he did not represent Perez in federal court, and she filed her federal habeas petition pro se with a request for the appointment of counsel. Therefore, Perez was not prohibited from filing pro se in federal court.

entitled to equitable tolling because his prior counsel, who had withdrawn, provided erroneous advice on the AEDPA statute of limitations. 292 F.3d at 1067–68. Therefore, because an attorney's "garden variety" miscalculation of a client's AEDPA deadline is not an extraordinary circumstance warranting equitable tolling, Whipple's failure to advise Perez of the deadline to file her federal habeas petition, after she knew he was not representing her, is likewise not a continuing extraordinary circumstance that prevented her from filing her federal habeas petition.[7]

2

In a similar vein, Perez asserts that Whipple did not "inform [Perez] of her options" and did not "provide her with a copy of the [state] court's written order" denying post-conviction relief. The majority expands on Perez's argument to conclude that, even after Perez knew that Whipple was not representing her and that she was representing herself, the effects of Whipple's abandonment

---

[7] The majority also argues that Whipple prevented Perez from timely filing her federal habeas petition because he failed to return her case file. Maj. Op. 15. But Perez does not make this argument, and it is not our place to do so for her. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (explaining that in our adversarial system "we follow the principle of party presentation" and rely on the parties to frame the issues). The majority notes that claims, not arguments, are waived. Maj. Op. 15, n.3. But the issue is not that Perez has waived a claim, but rather that the majority violates the rule of party presentation by asserting an argument that Perez did not make. Moreover, neither the majority nor Perez argue that there is a causal link between Perez not having her complete case file and her failure to timely file her habeas petition. Indeed, she prepared her petition by copying from her state post-conviction brief, which she had in her possession. Perez did not even request her case file until 2019, several years after she filed her habeas petition.

continued until at least after the filing deadline and "ma[de] it all but impossible [for her] to calculate the new AEDPA deadline." Maj. Op. 15, 25. As set forth above, the extraordinary circumstances of Whipple's abandonment were dispelled by Perez's knowledge that she needed to protect herself. And even if that were not the case, the record establishes that Perez knew that the state court had denied relief, understood that there was a filing deadline for her federal habeas petition, and acted in accordance with her calculations of the filing deadline. Even though she did not correctly calculate the filing deadline, a pro se petitioner's "inability correctly to calculate the limitations period is not an extraordinary circumstance warranting equitable tolling." *Rasberry*, 448 F.3d at 1154.

First, Perez understood that the trial court had denied her state petition for post-conviction relief; it is undisputed that she was in the courtroom on December 5, 2013 when the state trial court orally denied the petition for post-conviction relief and directed the State to prepare a proposed order of dismissal.[8] Therefore, on December 5, 2013, she knew that her "case had been decided." *Cf. Gibbs*, 767 F.3d at 886 (noting that a petitioner's lack of actual notice that the state court has "reached a final resolution of his case can provide grounds for equitable tolling" (quoting *Ramirez*, 571 F.3d at 997)).

---

[8] In a March 28, 2019 declaration, Perez acknowledged that she was "present in court on December 5, 2013, . . . when the court ruled it was going to deny my petition." The transcript of the December 5, 2013 hearing and her counseled opening brief also establish that she was present at the hearing. But, oddly, in two sworn statements that she submitted to the district court on December 8, 2014, Perez stated that she was "not present for that hearing."

Second, the state court mailed the notice of entry and the dismissal order to Perez and Whipple on January 21, 2014.**[9]** The majority erroneously asserts that "Perez attested that she never received this notice." Maj. Op. 17. But Perez did not state in her affidavit that she *never received* a copy of the state court's dismissal notice or order. Instead, she stated, "[she] has no denial documents," i.e., the state court order was not presently in her possession, not that she never received it. Similarly, in her opening brief she does not argue that she *never received* the notice and order but instead carefully argues that "there is no evidence [that she] received a copy of the written order" and that the prison mail logs do not establish that she received mail near the date on the mailing certificate. If she never received the notice and order, she could have simply stated that in her declaration and opening brief. Nonetheless, even though the prison mail logs do not conclusively establish that Perez received a copy of the notice of entry and the attached order, the state court's certification that it mailed a copy of the notice and order to Whipple and Perez on January 21, 2014, considered with the absence of any avowal from Perez that she did not receive the documents, is sufficient to establish that she received the notice and order.**[10]**

Third, although Perez claimed in her March 28, 2019 declaration that she "didn't know when [her] federal petition

---

[9] Perez acknowledges that the court's notice of entry includes a certification that the notice and order were mailed to her and Whipple on January 21, 2014.

[10] The State prepared the proposed order, lodged it with the state court, and mailed it to Whipple on December 11, 2013. The prison mail logs show that Perez received mail from both Whipple and the state court on January 8, 2014, nearly a month after the State lodged the proposed order and mailed it to Whipple

was due," the record establishes that she believed it was due by December 5, 2014, and that she acted accordingly.**[11]** Perez asserts that, on October 29, 2014, she "received a blank § 2254 form" for filing a federal habeas petition. That form contained the following instruction: "If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. [§] 2244(d) does not bar your petition." That section of the form, labeled "TIMELINESS OF PETITION," also included the full text of § 2244(d)(1) and (2), which further explained how to calculate the limitations period, including any tolling periods. Thus, it appears Perez calculated the AEDPA limitations period as one year from the date the state court orally denied her petition for post-conviction relief, or December 5, 2014.**[12]**

---

[11] The majority argues that even if Perez calculated the filing deadline as December 5, 2014, prison officials "prevented her from meeting *that* deadline by unpredictably rescheduling her library appointment from December 5 to December 8." Maj. Op. 29. The majority then argues that "these circumstances" do "not suggest unreasonable delay on her part." Maj. Op. 29–30. The problem with this argument is that by December 5, the December 1 filing deadline had already expired. In other words, whether Perez mailed her petition on December 5 or December 8 is irrelevant; it was untimely by both dates.

[12] Although Perez apparently did not understand when her judgment of conviction became final or how the statute of limitations was tolled while her state petition for post-conviction relief was pending, she understood that there was a one-year time limit to file her petition. We have repeatedly held that an attorney's miscalculation of the limitations period does not constitute extraordinary circumstances sufficient to warrant equitable tolling. *See Doe v. Busby*, 661 F.3d 1001, 1011–12 (9th Cir. 2011) (explaining that "the AEDPA deadline will not be tolled for a garden variety claim of excusable attorney neglect or mistake" such as

On December 2, 2014, Perez submitted a request to the law library for "legal copies and mail out to [the] U.S. District Court" that "needs to be brass-slipped no later than Friday, December 5, 2014."[13] Based on her request to mail her petition by December 5, 2014, the date she calculated as the filing deadline, it appears that she even understood the mailbox rule. *See Houston v. Lack*, 487 U.S. 266, 270, 275 (1988) (explaining that, pursuant to the "mailbox rule," federal courts deem the filing date of a document to be the date it was given to prison officials for mailing). Moreover, she dated the petition "December 3, 2014," which is the date she thought she would be mailing the petition and stated that she believed it was timely if "placed in the prison mailing system" on that date.

---

"inadvertently miscalculating a filing deadline in a non-capital case"); *Randle*, 604 F.3d at 1058 (stating that "an attorney's negligence in calculating the limitations period for a habeas petition does not constitute an 'extraordinary circumstance' warranting equitable tolling" (citation omitted)); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (concluding that an attorney's miscalculation of the limitations period did not constitute extraordinary circumstances to support equitable tolling). Thus, a pro se prisoner's miscalculation of the filing deadline cannot be an extraordinary circumstance that warrants equitable tolling, especially considering that such a miscalculation is attributable to the petitioner and "thus is not a circumstance beyond the litigant's control." *Holland*, 560 U.S. at 657 (Alito, J., concurring).

[13] The majority cites this December 2, 2014 request for an appointment to mail her federal habeas petition as evidence of Perez's diligence, suggesting that Perez filed multiple requests "marked 'Time Sensitive' and seeking an appointment 'as soon as possible.'" Maj. Op. 28–29 (stating that "the kites [plural] Perez submitted . . . demonstrate. . . urgency"). But this was the *only* request Perez submitted that expressed any urgency, was marked "time sensitive," or requested an appointment by a specific date. *See infra* at nn.15, 16.

Thus, on December 5, 2013, Perez knew that the state court had orally denied her petition for post-conviction relief, and, at the latest, by October 29, 2014—the date she states she received the "blank § 2254 form" to fill out her federal habeas petition—she knew that there was a one-year filing deadline, which her statements and actions indicate she calculated as December 5, 2014.

3

Perez does not explain why she did not have sufficient time to file her federal habeas petition after she determined that Whipple had abandoned her. In September 2014, Perez started working with inmate law library clerk Rosemary Vandecar to prepare her appeal in her state post-conviction proceedings and her federal habeas petition. On September 16, 23, and 25, 2014, Perez submitted inmate request forms (or kites) requesting appointments with the law library to pick up forms, mail legal documents and make copies, and "look up the appeals process." According to Perez and Vandecar, they first worked on the notice of appeal for the state post-conviction proceedings, which Perez mailed on September 25, 2014, and then they began working on the federal habeas petition.

Perez states that on October 29, 2014, a month after she mailed her state court notice of appeal, she requested and received "a blank § 2254 form, which is the form [she] used to file [her] federal petition." Preparing her habeas petition with this form required Perez to check boxes, provide short answers, and list her grounds for relief. The form explicitly instructed her not to "argue or cite law. Just state the specific facts that support your claim." As Perez explained, "to make it clear that [she] was raising the claims from [her] direct appeal, [she] just copied [her statement of issues] from [her]

brief." Vandecar confirmed that she "knew they weren't allowed to include citations or case law," so she and Perez "list[ed] the issues exactly as they were in the brief."

Perez does not explain why she was unable to prepare her habeas petition, which required her to fill out a form document with check box responses, two-to-three-line short answers, and a list of her grounds for relief without making legal arguments or citing any case law, between September 14 and December 1 of 2014. Instead, the record establishes that she had ample time to complete the form habeas petition, including by copying the grounds for relief from the brief for her direct appeal.

Notably, Perez's opening brief argues that she requested a financial certificate to file her habeas petition on November 12, 2014, and that her petition would have been timely filed if she had received her financial certificate by November 20, 2014. Thus, Perez's own statements support the conclusion that she had completed her habeas petition by early to mid-November 2014, more than two weeks before the filing deadline. In sum, Perez's conduct and statements establish that counsel's actions did not prevent her timely filing. *See Smith*, 953 F.3d at 600–01.

The majority does not dispute the timing of when Perez began working on her habeas petition or what was involved in completing the form petition. Instead, the majority asserts that "[t]he fact that Perez had enough time to 'fill out a form document' is not the end point of our inquiry." Maj. Op. 20. The majority further reasons that "[i]f the existence of an extraordinary circumstance depends on a showing that the petitioner could not have feasibly overcome the circumstance with more laborious effort, then any separate

inquiry into diligence would be rendered meaningless."
Maj. Op. 21.

But that is precisely what *Smith* requires; the elements of
equitable tolling are conjunctive and both extraordinary
circumstances causing the untimely filing and reasonable
diligence must be satisfied.  953 F.3d at 598–600 (first
holding that a petitioner "must show that [s]he has been
reasonably diligent in pursuing [her] rights," and then
holding, "relatedly, it is only when an extraordinary
circumstance prevented a petitioner acting with reasonable
diligence from making a timely filing that equitable tolling
may be the proper remedy").  The majority's reasoning,
however, obviates the reasonable diligence requirement if
extraordinary circumstances are established.  Here, even
accepting that Whipple's abandonment was an extraordinary
circumstance, the record demonstrates that with reasonable
diligence (or as the majority puts it, "more laborious effort"),
Perez could have met the filing deadline, and thus equitable
tolling does not apply.

Therefore, Perez has not shown that she was diligently
protecting her rights, or that post-conviction counsel's
conduct prevented her from timely filing her federal habeas
petition.  Because she has not established the required causal
connection between Whipple's conduct and her untimely
filing, she has not established that the filing deadline should
be equitably tolled based on counsel's abandonment.

4

Finally, to bolster its argument that Perez acted with
reasonable diligence in the months after she determined that
Whipple had abandoned her, the majority argues that the
circumstances of this case are like those in *Gibbs* and *Rudin*,
Maj. Op. 12–14, which we decided before our en banc

decision in *Smith,* and in which we applied the since-rejected stop-clock method to calculate equitable tolling. *Gibbs*, 767 F.3d at 885 & n.4, 891–92; *Rudin*, 781 F.3d at 1056–59. In these cases, we addressed whether attorney abandonment can constitute extraordinary circumstances, but we did not consider the issue presented here: whether a petitioner has acted with reasonable diligence to meet the AEDPA filing deadline after an extraordinary circumstance has been dispelled. [14] *See Smith,* 953 F.3d at 598–99. Indeed, in *Gibbs*, we cited the stop-clock holding of *Socop-Gonzalez v. INS*, as the law of the circuit and stated that, there, we "rejected the approach to equitable tolling wherein courts consider whether a claimant should have been expected to file his lawsuit within the amount of time left in the statute

---

[14] The majority also suggests that Perez acted with reasonable diligence because she filed her habeas petition seven days after the deadline expired while in other cases petitioners have received the benefit of equitable tolling after longer filing delays. Maj Op. 34 (citing cases). The majority over simplifies the fact-specific tolling analysis and conclusions in these cases. For example, in *Huizar v. Carey*, we noted that the petitioner filed his habeas petition almost three years after the filing deadline expired but we remanded to the district court to determine whether the facts showed that the petitioner acted with the requisite diligence. 273 F.3d 1223–24 (9th Cir. 2001). Similarly, in *Spitsyn*, we noted that equitable tolling is a "discretionary doctrine" that "does not lend itself to bright-line rules." 345 F.3d at 801 (citations omitted). And while we concluded that the "failures of Spitsyn's attorney may justify equitable tolling[,]" we remanded for the district court to determine "whether Spitsyn exercised reasonable diligence in ultimately filing his petition." *Id.* at 802. In *Fue v. Biter*, we reiterated that a determination of a petitioner's diligence requires consideration of "the petitioner's overall level of care and caution in light of his particular circumstances." 842 F.3d 650, 654 (9th Cir. 2016) (quotations marks and citation omitted). We noted that "reasonable diligence is a fact-specific inquiry," *id.* at 654, and we remanded for the district court to consider those facts, *id.* at 657.

of limitations, after an extraordinary circumstance barring filing was lifted." *Gibbs*, 767 F.3d at 892 (citing *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1195 (9th Cir. 2001) (en banc)). We also stated that "courts should not take it upon themselves to decide how much time a claimant needs to file a federal case." *Id*. This approach is no longer valid after *Smith*.

Moreover, the circumstances here are not like those in *Gibbs* and *Rudin* because in those cases the deadlines for the petitioners to file their federal habeas petitions had expired before the petitioners knew that their attorneys had abandoned them, that their state court proceedings had concluded, and that they needed to take action to seek federal habeas relief. *Gibbs*, 767 F.3d at 888 ("By the time Gibbs learned that his state post-conviction proceeding was complete, the federal deadline had passed."); *Rudin*, 781 F.3d at 1056–57 (explaining that the federal filing deadline expired before Rudin had a "clue" that she needed "to protect herself"). In contrast, Perez was present when the state court orally denied her petition for post-conviction relief, and the federal filing deadline was still pending when Perez concluded that Whipple had abandoned her. Thus, Perez knew that she needed to "protect herself" several months before the § 2254 deadline expired. The majority's reliance on *Gibbs* and *Rudin* is misplaced.

## B

Perez also generally complains about limited access to the law library, library staffing issues, delays in obtaining appointments to use the library, the library's use of "computers with Lexis Nexis" instead of law books, and outdated forms. But she does not explain how any of these issues prevented her from preparing her federal habeas

petition.  Although Perez and Vandecar both complain about library access, neither describes specific delays in obtaining library access that affected Perez's ability to prepare and complete her petition.  Instead, without explaining any causal connection between her complaints about the library and her untimely filing, Perez baldly asserts that "she is entitled to equitable tolling."  We have repeatedly rejected such arguments.  *See Frye*, 273 F.3d at 1146 (explaining that "we [have] rejected the argument that lack of access to library materials automatically qualifie[s] as grounds for equitable tolling, and we [have] emphasized the importance of a more fact-specific inquiry" (citation omitted)).

Moreover, even if Perez's arguments could be read to suggest that delays in obtaining library appointments caused her untimely filing, that argument would fail because it is not supported by the record.  The record of Perez's requests for library appointments and forms demonstrates that she promptly received requested appointments and forms, usually within a few days.[15]  Thus, Perez has failed to

---

[15] From September to December 2014, Perez requested appointments related to her state post-conviction relief appeal and her federal habeas petition.  On September 16, 2014, she requested "an appointment to pick up a federal court notice of motion to appeal."  Library staff responded three days later with the requested "forms attached."  On September 23, Perez requested "an app[ointment] to mail out legal motion and make copies."  Library staff responded one day later, on September 24, and scheduled the requested appointment for the next day, September 25.  On September 25, Perez requested "an app[ointment] to look up the appeals process."  Library staff responded three days later, on September 28, and scheduled the requested appointment for September 30.  On October 29, Perez requested "an appointment to get the ineffective assistance of council [sic] motion," and library staff responded the same day with the "forms attached."  On November 12, and 24, Perez submitted requests to

establish the required causal connection between her general complaints about the library and her untimely filing. *See Holland*, 560 U.S. at 649; *Smith*, 953 F.3d at 595; *Spitsyn,* 345 F.3d at 799. Therefore, she is not entitled to equitable tolling based on her complaints about the library.

C

Perez next argues that prison staff created an extraordinary circumstance that caused her untimely filing by delaying the processing of her financial certificate. Specifically, Perez argues that she "couldn't file her petition without her financial certificate . . . [and] she had to ask for it twice, which caused a delay of at least two weeks." The majority again accepts Perez's characterization of the record and concludes that prison staff delayed the processing of Perez's financial certificate and this delay "was a contributing cause of Perez's petition being untimely." Maj. Op. 24. But the record establishes that any delay Perez experienced in obtaining a financial certificate was caused by her own lack of diligence and did not prevent her from filing her habeas petition.

1

As an initial matter, although Perez and Vandecar both complained that it took two to three weeks to get an

---

obtain a financial certificate from Inmate Banking Services. Library staff responded and sent the requests for processing on November 20 and December 1. On December 2, Perez requested an appointment to send mail "no later than" December 5. Library staff responded in two days, on December 4, and scheduled the appointment for December 8.

appointment with the library[16] and that appointments were necessary to mail legal documents, Perez did not initiate the process to request a financial certificate until November 12, 2014. On that date, she submitted a request to the law library asking that her financial certificate be "submit[ted]." Prison staff's response indicated that her request—to "submit" the certificate—was "[d]one" on November 20, 2014. The response does not state that the financial certificate had been processed; it simply says "[d]one."

Nonetheless, without any record support, the majority asserts that the prison "erroneously" stated the request to *process* the certificate was "done" and "affirmatively misled [Perez] to believe that her request had been handled." Maj. Op. 21–22. But the request asked the law library to "*submit* [Perez's] financial certificate for . . . [her] habeas corpus paper work." (Emphasis added.). Prison staff responded "[d]one" to Perez's request that staff "submit" the financial certificate, and the prison's outbound mail logs confirm that

---

[16] The record does not support Perez's and Vandecar's claims that library appointments were delayed two to three weeks. Instead, the record demonstrates that Perez submitted five requests for library appointments and the requested appointments were scheduled promptly, usually within a few days, and always in less than a week. First, on September 16, 2014, she requested an appointment to pick up forms; the forms were provided to her three days later. Second, on September 23, she requested an appointment to "mail out [a] legal motion and make copies"; the appointment was scheduled two days later. Third, on September 25, she requested an appointment to "look up the appeals process"; the appointment was scheduled for September 30. Fourth, on October 29, she requested an appointment to "get the ineffective assistance of counsel motion"; the requested forms were provided to her that same day. Fifth, on December 2, she requested an appointment by December 5 to "mail out to the U.S. District Court"; the appointment was scheduled for December 8.

the library staff received the request at the Florence McClure
Women's Correctional Center (FMWCC) in Las Vegas,
Nevada on November 12, 2014, and sent it through
interoffice mail to Inmate Banking Services in Carson City,
Nevada on November 20, 2014, which is the same date that
they advised Perez that her request to submit the certificate
was "done."

As the State pointed out before the district court and in
its brief to this court, Perez initially submitted an incomplete
request for a financial certificate.[17]  In a memorandum to the

---

[17] In its answering brief, the State cites its Reply in Support of its Motion
to Dismiss, filed in the district court, to support its assertion that "[o]n
November 24, 2014, Inmate Banking returned [Perez's] financial
certificate because [she] did not sign the form and did not fill out her
inmate number."  Answering Brief for Appellee, at 24, *Perez v. Reubart*,
No. 22-15279, ECF 27 (9th Cir.).  That reply is included in the excerpts
of record filed in this court, Appellant's Excerpt of Record, Vol 3. at
457-77, *Perez v. Reubart*, No. 22-15279, ECF 12-4 (9th Cir.)), and it
cites to the November 24, 2014 memorandum from Inmate Banking
returning the incomplete financial certificate, which was filed in the
district court, *Perez v. Neven*, No. 14-2087, at ECF No. 4 (D. Nev.).
Because the reply and the November 24, 2014 memorandum were filed
in the district court, they are part of the record on appeal.  Fed. R. App.
P. 10(a)(1) (describing the "items [that] constitute the record on appeal"
and including "original papers and exhibits filed in the district court");
*see also* Fed. R. App. P. 30(a)(2) (explaining that a memorandum of law
filed in the district court "may be relied on by the court or the parties
even though not included in the appendix").  Ignoring Rules 10(a)(1) and
30 (a)(2) of the Federal Rules of Appellate Procedure, the majority
suggest that the State was required to submit these record materials as
"supplemental authority" under Rule 28(j).  Maj. Op. 23 n.8.  The
majority characterizes the State's failure to refile parts of the record with
a Rule 28(j) notice of supplemental authority as a "technical mistake"
and asserts that the "dissent on its own initiative collects the records that
the State never bothered to present to us, all the while insisting that Perez

law library supervisor dated November 24, 2014, Inmate Banking Services stated that Perez's financial certificate was being returned because an "[i]nmate signature and prison# [were] needed."

On an unknown date, Perez signed the certificate and provided her prisoner number, but the record does not indicate when the certificate bearing Perez's signature and prison number was returned to Inmate Banking Services. The financial certificate was completed and signed by an "authorized officer" on December 11, 2014, and the financial certificates (or inmate account statements) from June 12, 2014 to December 11, 2014 were attached.

Perez asserts that the law librarian told her on December 3, 2014 that there was a "delay . . . in the processing of her inmate Financial Certificate." But before that date, on November 24, Perez submitted a request for the "[l]aw library . . . [to] process [her] financial statement." The record does not indicate whether Perez was simply asking prison staff to process the financial certificate she had already submitted (which was incomplete), or whether she provided a properly completed certificate—bearing her signature and prison number—at this time. Library staff responded to the request and noted that the "[r]equest [was] submitted to [Inmate] Banking" on December 1. The outbound legal mail log also reflects that the request for a financial certificate was sent through interoffice mail to Inmate Banking Services on December 1.

---

must pay for her technical mistake." Maj. Op. 23–24 n.8. Of course, the State was not required to treat parts of the record as supplemental authority, and I am not somehow improperly "collecting records" by citing to documents that are part of the record on appeal.

Neither Perez nor the majority address the November 24, 2014 memorandum from Inmate Banking Services returning the incomplete and unsigned request for a financial certificate.  Instead, the majority speculates that Perez must have "deduced" that the prison "erroneously" told her that the financial certificate was "[d]one," and therefore renewed her request.  Maj. Op. 21 (alteration in original).  The majority then baldly asserts that, later, "Perez learned that the certificate remained in limbo due to processing issues" and states that "Perez was entirely dependent upon prison officials to process her financial certificate."  Maj. Op. 21–22.  There is nothing in the record that supports the majority's suggestion that any "processing issues" were caused by "prison officials," as opposed to Perez's own failure to properly complete her request for the financial certificate.

As explained above, the record establishes that Perez first submitted an incomplete and unsigned financial certificate request, which Inmate Banking Services returned on November 24, 2014 for Perez to sign and fill in her prisoner number.  On an unknown date, she signed the financial certificate and added her prison number, curing the deficiency noted in the memorandum from Inmate Banking Services.  Thus, any delays in Perez's receipt of the completed financial certificate were the result of Perez's delay in initially submitting a request for the certificate, and her errors in filling out the request for the financial certificate.  That prison staff received a renewed request on November 24, 2014, the Monday of Thanksgiving week, and sent it to Inmate Banking Services three business days later, on Monday, December 1, is not an extraordinary circumstance that warrants applying equitable tolling to excuse Perez's untimely filing.

2

On December 8, 2014, Perez mailed her federal habeas petition to the district court for filing.  At the same time, she filed an application to proceed IFP, an affidavit to accompany a motion for leave to appeal IFP, a motion for an enlargement of time to file her § 2254 petition and financial certificate, and a separate supporting affidavit.  In her motion for an enlargement of time, Perez requested 45 days, until January 17, 2015, to file her habeas petition.  She made the same request in her habeas petition.  She filed the financial certificate six months later, on June 10, 2015.  The district court granted the motion to proceed IFP, deemed the habeas petition filed on the date it was mailed, December 8, 2014, stated that the delay until June 10, 2015 in receiving Perez's financial certificate would "not be held against [her] with respect to the AEDPA statute of limitations," and denied the motion for an enlargement of time as moot.

Despite the undisputed timeline of the filings reflected in the district court docket, Perez asserts that if she had "filed her petition without the financial certificate, it would have been dismissed."  Perez's counterfactual argument fails because she constructively filed her petition without a financial certificate by mailing it on December 8, 2014, and it was accepted and filed by the district court on September 28, 2015, even after Perez did not submit the financial certificate for six months.

The majority takes a different approach and asserts that "[i]t is of no moment that Perez ultimately filed her petition without receiving her financial certificate."  Maj. Op. 24. The majority reasons that considering what actually occurred would create a "Catch-22" because prisoners should not be forced to choose between submitting an

incomplete or untimely petition. *Id.* Thus, the majority concludes that "Perez's willingness to ultimately risk filing an incomplete petition" does not mean that the prison's untimely processing of her financial certificate was not an extraordinary circumstance. *Id.*

These statements ignore some inconvenient facts. First, the delay in processing the financial certificate was the result of Perez's delay in requesting the certificate, compounded by her failure to fill in her prisoner number and sign the form when she did submit it. Second, Perez did not "choose" to risk filing an incomplete certificate. Instead, she filed her habeas petition with an application to proceed IFP, a motion for an enlargement of time, and supporting affidavits. Thus, she was fully aware of how to use available procedural safeguards to ensure her habeas petition was accepted for filing. She could have filed her habeas petition with these accompanying motions and affidavits before the December 1, 2014 filing deadline, and she provides no explanation for why she did not.

In sum, Perez's successful filing of her habeas petition on December 8, 2014 is neither irrelevant nor a procedural anomaly, and it demonstrates that any delay in receiving a financial certificate was not an extraordinary circumstance that caused her to untimely file her habeas petition.

3

The majority also relies upon *Grant v. Swarthout*, 862 F.3d 914, 926 (9th Cir. 2017), to conclude that an extraordinary circumstance existed because "Perez was entirely dependent upon prison officials to process her financial certificate, and their delay caused her late filing." Maj. Op. 22. But as set forth in Sections I.C.1 and I.C.2, Perez herself caused the delay in the processing of her

request for the certificate, and Perez was able to successfully file her habeas petition without the financial certificate.

Nonetheless, the majority asserts that this case is "nearly identical" to the circumstances in *Grant*, Maj. Op. 22, but there are significant differences between these cases. Grant requested a prison account certificate on the same day that he received notice that his state habeas petition had been denied, which was seven days before the AEDPA limitations period would expire. 862 F.3d at 917, 923–24. His corrections counselor received the account certificate but delayed providing it to Grant for over two weeks. *Id.* at 917. Grant filed his federal habeas petition the same day he received the account certificate, but it was nonetheless untimely. *Id.*

Here, unlike the petitioner in *Grant*, Perez did not act immediately to request a financial certificate the same day she learned the state court had denied post-conviction relief (or even when she concluded that counsel had abandoned her), and she did not file her financial certificate the day she received it. Instead, Perez knew that the state court had denied relief nearly a year before the federal habeas deadline expired, and she knew that she needed to protect her rights by preparing a pro se habeas petition at least two-and-a-half months before the filing deadline, but she delayed requesting a financial certificate until two weeks before that deadline, and she further delayed filing her habeas petition even after she had completed it.

In *Grant*, we applied the since-rejected stop-clock approach to equitable tolling to excuse Grant's untimely filing. We explained that "[i]f a prisoner can demonstrate that he is entitled to equitable tolling for a certain period of time, that period will be subtracted from the total number of

days that have passed." *Id*. at 918, 925. We also rejected the argument that "equitable tolling may be denied because a court decides that the prisoner acted unreasonably by failing to work diligently on his case throughout the entire portion of the one-year statute-of-limitations period that preceded the occurrence of the 'extraordinary circumstance.'" *Id*. at 919.

But sitting en banc in *Smith*, we rejected both of these approaches to the analysis of equitable tolling, starting with the stop-clock. *Smith*, 953 F.3d at 599 (stating that "we today reject the stop-clock approach"). We then held that the causation requirement announced in *Holland* "requires courts to evaluate a petitioner's diligence in all time periods—before, during, and after the existence of an 'extraordinary circumstance'—to determine whether the extraordinary circumstance actually did prevent timely filing." *Id*. at 595 (citing *Gibbs*, 767 F.3d at 892). Therefore, we cannot apply the stop-clock approach or day-counting that we applied in *Grant*. Instead, we must consider Perez's diligence throughout the entire limitations period, including after any extraordinary circumstance was dispelled, which here includes the period after Perez determined that Whipple had abandoned her until the filing deadline. As detailed in Section I.A, Perez was not diligent in preparing her petition during this period (whether it is calculated as approximately four months from August 6 to December 1 or two-and-a-half months, from September 14 to December 1).

4

Finally, the majority asserts that Perez was forced to file her habeas petition without a financial certificate, and in doing so she demonstrated that she was diligent in protecting her rights. Maj. Op. 8–9, 24. The majority also suggests that

Perez delayed filing her habeas petition because she did not have her financial certificate. But Perez's sworn statements, records requests, and court filings establish that, to the extent she deliberately delayed filing her habeas petition, it was because she thought she needed *court records*, not a financial certificate.[18] To the extent she delayed filing her habeas petition because she believed she needed court records, that delay is not attributable to prison staff, it is not an extraordinary circumstance, and it has no bearing on whether she acted diligently to obtain her financial certificate.

## II

Perez has not met her burden of showing that she was reasonably diligent in protecting her rights, and therefore she has not shown a causal connection between any alleged extraordinary circumstances and her failure to file her federal habeas petition before the limitations period expired. Equitable tolling does not apply to excuse her untimely filing. I respectfully dissent.

---

[18] In her March 28, 2019 declaration, Perez stated, "It was my understanding that I couldn't file in federal court until I had all of my paperwork from the courts," and therefore she "wrote a request for records." In her opening brief, she argues that "she thought she couldn't file a federal petition without 'all of [her] paperwork from the courts.'" Before filing her federal habeas petition, she filed a records request with the state court to obtain her case file, and later filed an affidavit in state court, complaining that she had not received "any of the requested documents, trial, appellate, post-conviction." With her habeas petition, she filed an application to proceed IFP stating that she "has been unable to get a copy of her requested trial and appeal file records." In her motion for an enlargement of time she stated that she had "not yet received documents and transcripts," and that "requests ha[d] been mailed to all courts, parties, and counsel of records [sic]."